Glenn Rothner (SBN 67353)
ROTHNER SEGALL & GREENSTONE
510 South Marengo Avenue
Pasadena, CA 91101
grothner@rsglabor.com
Telephone: (626) 796-7555
Facsimile: (626) 577-0124

Daniel A. Zibel (*admitted pro hac vice*)
Aaron S. Ament (*admitted pro hac vice*)
Robyn K. Bitner (*admitted pro hac vice*)
NATIONAL STUDENT LEGAL DEFENSE NETWORK
1015 15th Street Northwest, Suite 600
Washington, D.C. 20005
dan@defendstudents.org
aaron@defendstudents.org
robyn@defendstudents.org
Telephone: (202) 734-7495

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN FEDERATION OF TEACHERS, CALIFORNIA FEDERATION OF TEACHERS, ISAI BALTEZAR, & JULIE CHO,<br><br>   *Plaintiffs*,<br><br>vs.<br><br>ELISABETH DEVOS, *in her official capacity as Secretary of Education*, & UNITED STATES DEPARTMENT OF EDUCATION,<br><br>   *Defendants*. | Case No. 20-cv-00455-EJD<br><br>PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION<br><br>Hon. Edward J. Davila |

**INTRODUCTION**

Defendants Secretary of Education Elisabeth DeVos and the United States Department of Education ("Defendants" or the "Department") have moved for a limited, partial reconsideration of this Court's September 3, 2020, Order granting in part and denying in part Defendants' Motion to Dismiss [Dkt. 33] ("Order"). As it relates to Plaintiffs Isai Baltezar, Julie Cho, American Federation of Teachers ("AFT"), and California Federation of Teachers ("CFT") (collectively, "AFT Plaintiffs"), Defendants seek to overturn this Court's Order allowing AFT Plaintiffs to proceed with Count 11.[1] Their motion should be denied.

Count 11 alleges that Defendants failed to comply with a bedrock procedural requirement of the Administrative Procedure Act ("APA"), *i.e.*, that federal agencies must provide adequate notice and an opportunity to comment—informed by the information and data upon which the agency relied—when engaging in rulemaking. 5 U.S.C. § 553(c). More specifically, Count 11 asserts that Defendants committed serious procedural error by repealing the Gainful Employment Rule without providing the public with the technical studies, analyses, and data the Department used. Compl. ¶¶ 442–46; *see also* Program Integrity: Gainful Employment, 79 Fed. Reg. 64,890 (Oct. 31, 2014), *corrected by* 79 Fed. Reg. 71,957 (Dec. 4, 2014) (collectively, the "Gainful

---

[1]     Separately, Defendants argued in the parties' Joint Case Management Conference Statement that the Court's Order dismissed Counts 1–3 on standing grounds. *See* J. Case Management Conference Statement [Dkt. 35] at 1–3. Quoting the plain text of the Order, AFT Plaintiffs disputed that contention. *Id.* at 3 (noting that the Order dismissed the "Disclosure Claims," defined by the Court as ¶¶ 374–89 of the AFT Complaint (corresponding to Count 4), and the "Eligibility Claims," defined by the Court as ¶¶ 390–441 of the AFT Complaint (corresponding to Counts 5–10)). Because that argument was not raised in Defendants' present motion, and given the Court's instruction to limit AFT Plaintiffs' response to only those arguments raised in that motion, AFT Plaintiffs do not address it here. To the extent the Court construes Defendants' motion to seek reconsideration of its Order with respect to Counts 1–3, AFT Plaintiffs respectfully request the opportunity to brief that issue.

Employment Rule"); Program Integrity: Gainful Employment, 84 Fed. Reg. 31,392 (July 1, 2019) (the "Repeal"). As the United States Court of Appeals for the District of Columbia noted more than thirty years ago:

> The purpose of the comment period is to allow interested members of the public to communicate information, concerns, and criticisms to the agency during the rule-making process. If the notice of proposed rule-making fails to provide an accurate picture of the reasoning that has led the agency to the proposed rule, interested parties will not be able to comment meaningfully upon the agency's proposals. As a result, the agency may operate with a one-sided or mistaken picture of the issues at stake in a rule-making. In order to allow for useful criticism, it is especially important for the agency to identify and make available technical studies and data that it has employed in reaching the decisions to propose particular rules. To allow an agency to play hunt the peanut with technical information, hiding or disguising the information that it employs, is to condone a practice in which the agency treats what should be a genuine interchange as mere bureaucratic sport. An agency commits serious procedural error when it fails to reveal portions of the technical basis for a proposed rule in time to allow for meaningful commentary.

*Conn. Light & Power Co. v. Nuclear Regulatory Comm'n*, 673 F.2d 525, 530–31 (D.C. Cir. 1982). Count 11 asserts that Defendants flouted this basic procedural requirement.

Instead of being transparent about the data and sources that supported the Repeal, the Department obscured its own "analysis" and relied heavily on unidentified sources. *See* Compl. ¶ 445. When warned through public comments and a challenge under the Information Quality Act of its failure to comply with the APA's procedural rules, *see* Order at 22 (citing 84 Fed. Reg. at 31,426); Compl. ¶¶ 216, 434(b), the Department rejected the opportunity to correct its failures, claiming vaguely instead that it had used "well-respected" and "peer reviewed" research. Compl. ¶ 216. Even when challenged in this litigation to identify the sources it used, the Department could not do so. Order at 22 ("Defendants do not identify *any* specific references in the proposed or final rule that support their contention that the DOE disclosed the relevant research.") (emphasis in original). On these facts, the Court correctly held that AFT Plaintiffs had stated a claim for an APA violation. *Id.*; *see also*, *e.g.*, *Penobscot Indian Nation v. HUD*, 539 F. Supp. 2d

40, 49 (D.D.C. 2008) (finding that an agency violated the APA's procedural requirements by promulgating a rule relying upon an undisclosed "internal analysis of its loan portfolio").

Nevertheless, Defendants have moved for partial reconsideration of this Court's decision allowing Count 11 to proceed. *See* Defs.' Mot. for Partial Reconsideration [Dkt. 38] (hereinafter, "Defs.' Mot."). Defendants do not dispute the Court's holding that AFT Plaintiffs stated a valid claim. Order at 22. Nor do Defendants dispute that a procedural rights framework applies to the Court's analysis of whether AFT Plaintiffs have Article III standing to bring Count 11. Defs.' Mot. at 2 ("Defendants do not seek reconsideration of the Court's contrary determination" that a "relaxed 'procedural rights' analysis . . . appl[ies] to the *AFT* Plaintiffs' Count 11[.]"). Rather, Defendants contend—for the very first time—that AFT Plaintiffs failed to adequately allege two requirements of Article III standing involving procedural rights: (1) a concrete interest in the Repeal; and (2) whether the Court can redress their procedural injury. Because AFT Plaintiffs have adequately alleged Article III standing with respect to Count 11, Defendants' Motion for Partial Reconsideration should be denied.

## STATEMENT OF THE ISSUE

Whether the Court should reconsider its holding that AFT Plaintiffs have Article III standing to assert the violation of a procedural right in Count 11 because they have adequately alleged a concrete interest and a claim redressable by an order of this Court.

## STANDARD OF REVIEW

Any order that does not terminate an action can be revised at any time before the entry of judgment. Fed. R. Civ. P. 54(b). Motions for reconsideration "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed *clear error*, or if there is an intervening change in the controlling law." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) (emphasis added) (citations omitted). "A motion for reconsideration 'may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.'" *Marlyn Nutraceuticals v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)) (emphasis in original).

1    Reconsideration is an "extraordinary remedy, to be used sparingly." *Kona Enters.*, 229 F.3d at

2    890.

3          With respect to standing on a procedural claim, a plaintiff must allege that: (1) the agency

4    "violated procedural rules designed to protect" plaintiffs' "concrete interests," *California ex rel.*

5    *Imperial Cty. Air Pollution Control Dist. v. U.S. Dep't of the Interior*, 767 F.3d 781, 789–90 (9th

6    Cir. 2014); (2) "it is reasonably probable that the challenged [agency] action will threaten their

7    concrete interests," *Nuclear Info. & Res. Serv. v. Nuclear Regulatory Comm'n*, 457 F.3d 941, 949

8    (9th Cir. 2006) (citations omitted); and (3) there is "some possibility that the requested relief will

9    prompt the injury-causing party to reconsider the[ir] decision."[2] *Massachusetts v. EPA*, 549 U.S.

10   497, 517–18 (2007). Because this case is at the motion to dismiss stage, AFT Plaintiffs are only

11   required to allege a plausible claim that each of the standing elements is present. *Jiminez v. Tsai*,

12   No. 5:16-CV-04434-EJD, 2017 WL 4877442, at *5 (N.D. Cal. Oct. 30, 2017) (Davila, J.).

13                           **ARGUMENT**

14         Defendants' motion for partial reconsideration—narrowly limited to whether AFT

15   Plaintiffs have adequately alleged a concrete interest and redressability to establish Article III

16   standing under the relaxed procedural rights analysis—should be denied. Not only has Congress

17   acknowledged students' concrete interests in the Repeal, but AFT Plaintiffs have set forth

18   numerous facts to independently demonstrate those interests. In addition, the Department has

19   conceded that the Repeal harms AFT Plaintiffs' interests by exposing them to the substantial risk

20   of attending a sub-optimal program. This Court can redress AFT Plaintiffs' procedural injuries

21   through an order vacating the Repeal and remanding back to the Department with instructions to

22   comply with the APA's procedural requirements. *See*, *e.g.*, *Penobscot Indian Nation*, 539 F.

23   Supp. 2d at 54 (vacating and remanding a rule in light of HUD's failure to provide for comment

24

25   [2]    Because Defendants do not challenge that AFT Plaintiffs have adequately alleged that the

26   Department violated the APA's procedural rules or that those rules protect their concrete

27   interests (assuming those interests are adequately alleged), AFT Plaintiffs do not address those

28   requirements for Article III standing herein.

**BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION**   4
**Case No. 20-cv-00455-EJD**

the "internal analysis of its loan portfolio" used to support a rule). Because Defendants have presented no new evidence or controlling law, nor made clear how the Court's Order—which correctly addressed only those arguments presented to it in Defendants' Motion to Dismiss— committed clear error,[3] the Court should allow Count 11 to proceed.

## I.      AFT Plaintiffs have alleged a concrete interest in the Repeal.

Defendants' claim that students "have no interest at all at stake [sic]" in the Repeal strains credulity. Defs.' Mot. at 14. It ignores Congress' statements and AFT Plaintiffs' allegations about students' concrete interests in the accessibility and affordability of higher education, as well as the Department's own prior pronouncements about the Repeal's impact on those interests. When taken into account, AFT Plaintiffs have sufficiently alleged Article III standing to bring Count 11.

To begin, Defendants wholly ignore that Congress has highlighted the important role that students play in rulemaking under Title IV of the Higher Education Act ("HEA") by requiring the Department to "obtain . . . advice and recommendations" from "students" both before and

---

[3]      Because Defendants "could have raised these arguments," but "failed entirely to" do so "in its briefing on the motion to dismiss[,] . . . this Court need not consider them on a motion for reconsideration." *In re Apple Device Performance Litig.*, 386 F. Supp. 3d 1155, 1168 (N.D. Cal. 2019) (Davila, J.). After AFT Plaintiffs explained in their Opposition to Defendants' Motion to Dismiss that Count 11 asserted a procedural injury, *see* AFT Pls.' Opp. to MTD at 22, Defendants countered with only two discrete points: (1) that the standard for asserting a procedural injury does not apply to Count 11 (a point that Defendants no longer dispute); and (2) that Count 11 fails to state a claim because the Complaint "do[es] not identify cognizable injuries." Defs.' Reply [Dkt. 28] at 12–13. Defendants did not contend that AFT Plaintiffs did not have a "concrete interest," nor did they assert that our procedural injury was not redressable. Reconsideration is therefore inappropriate. *Silicon Valley Self Direct v. Paychex*, No. 5:15-CV-01055-EJD, 2015 WL 5012820, at *2 (N.D. Cal. Aug. 24, 2015) (Davila, J.) ("Reconsideration does not allow party to raise arguments it should have made earlier.").

during the rulemaking process. *See* 20 U.S.C. § 1098a(a)(1) (requiring the Secretary of Education to involve students in pre-rulemaking meetings); *see also id.* § 1098a(b)(1) (requiring the Secretary to include "individuals nominated by groups" representing students in negotiated rulemaking). In adopting these provisions, the House and Senate Conference Committee unambiguously stated their "intent . . . that the Secretary should include students and student advocates from all sectors of postsecondary education in the negotiated rulemaking process[.]" H.R. Rep. No. 102-630, at 516 (1992) (Conf. Rep.), *reprinted in* 1992 U.S.C.C.A.N. 334, 516. This is not surprising, given that one of the central purposes of the HEA has always been to make postsecondary education accessible to all. *See* 20 U.S.C. § 1070 ("It is the purpose of this part[] to assist in making available the benefits of postsecondary education to eligible students."). Congress has therefore affirmed students' concrete interest in developing regulations that affect their ability to receive federal student aid. *Cf. Paulsen v. Daniels*, 413 F.3d 999, 1005 (9th Cir. 2005) (holding that plaintiff's concrete interest in having the public participate in rulemaking that made them ineligible for a sentence reduction was sufficient to challenge the Bureau of Prison's interim rule).

Independent of Congress's determination, Mr. Baltezar and Ms. Cho have specifically alleged a concrete interest in the Repeal. Both individuals have alleged that they are planning to pursue postsecondary programs to further their careers, are researching programs to attend, are interested in information that allows them to compare debt and earnings information across institutions and programs, and are concerned about attending a program that will not enable them to repay their student loans. Compl. ¶¶ 28–33, 36–41. AFT Plaintiffs have also alleged, and Defendants have conceded, that the Repeal exposes students to a substantial risk of "mak[ing a] poor educational investment[]." Compl. ¶¶ 51, 293; 84 Fed. Reg. at 31,445 ("To the extent non-passing programs remain accessible with the rescission of the 2014 Rule, some students may choose sub-optimal programs."); *see also* AFT Pls.' Opp. to Defs.' Mot. to Dismiss [Dkt. 27] at 9–11 (hereinafter, "AFT Pls.' Opp. to MTD") (discussing this substantive injury related to AFT Plaintiffs' concrete interest). These alleged interests are concrete and personalized and therefore sufficient for Article III standing. *Cf. California v. Bureau of Land Mgmt.*, No. 18-CV-00521-

HSG, __ F. Supp. 3d. __, 2020 WL 1492708, at *4 (N.D. Cal. Mar. 27, 2020) (holding that an "increased risk" to a concrete interest is sufficient for standing).

There can similarly be no doubt that the Repeal "affect[s] prospective and current students." 84 Fed. Reg. at 31,444. In fact, the Repeal is replete with concessions by the Department about its tangible impact on students. *See*, *e.g.*, 84 Fed. Reg. at 31,444 ("Eliminating sanctions against institutions based on the D/E rates will impact students."); 84 Fed. Reg. at 31,444 ("There are further costs and benefits to students who continue enrollment in a program that would have been in the zone or failing under the GE regulations," including an "investment" that is "not as fruitful as it might be[.]"); 84 Fed. Reg. at 31,455 ("[N]on-passing programs remain[ing] accessible with the [Repeal] . . . could lead to greater difficulty in repaying loans, . . . risking defaults"); *see also* AFT Pls.' Opp. to MTD at 9–11. These statements alone are sufficient to establish that AFT Plaintiffs have a concrete interest in the Repeal. *See California v. Azar*, 911 F.3d 558, 572 (9th Cir. 2018) (relying on an agency's own statements to establish standing under a higher, substantive threshold); *Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 104 (2d Cir. 2018) (same). Defendants' position in this litigation— that Mr. Baltezar, Ms. Cho, and other students "have no interest at all" in the Repeal—cannot be squared with these prior statements.[4]

---

[4]       AFT has also asserted a concrete interest as an organization, independent of the injuries to its members. AFT has alleged that the Repeal has frustrated one of its core missions, which is to fight for the financial rights of public service workers, including the cost of higher education and student loan debt. Compl. ¶ 15. AFT has also alleged that the Repeal caused it to divert resources to counteract its effects, including launching the #doyourhomework campaign to provide members with information relevant to choosing postsecondary programs likely to lead to earnings that bear a relationship to the program's costs. *Id.* ¶¶ 57–62. These activities are sufficient to establish AFT's concrete interest in the Repeal. Despite ample notice that AFT asserts standing on its own behalf, *see* Pls.' Opp. to MTD at 23–25, Defendants do not challenge AFT's organizational standing to assert Count 11.

## II. Defendants' APA procedural violations are redressable.

Defendants maintain that this Court cannot redress AFT Plaintiffs' procedural injury. Defs.' Mot. at 16. But as Defendants acknowledge, "[i]n a 'procedural rights' standing analysis, the standards for traceability and redressability are 'relaxed.'" *Id.* at 16 (quoting *Azar*, 911 F.3d at 571); *see also*, *e.g.*, *Massachusetts*, 549 U.S. at 517–18 (holding that a litigant alleging a violation of a procedural right "has standing if there is some possibility that the requested relief will promote the injury-causing party to reconsider the decision that allegedly harmed the litigant"); *Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 94–95 (D.C. Cir. 2002) ("A [litigant] who alleges a deprivation of a procedural protection to which he is entitled never has to prove that if he had received the procedure the substantive result *would* have been altered.") (emphasis added). Count 11 easily meets this relaxed standard.

To remedy the alleged procedural violations, AFT Plaintiffs ask this Court to vacate the Repeal and remand to the Department. Compl., Request for Relief ¶¶ B, C. Vacatur and remand is the default remedy under the APA. *See* 5 U.S.C. § 706(2)(D) (a reviewing court shall "hold unlawful *and set aside agency action*, findings, and conclusions found to be . . . without observance of procedure required by law") (emphasis added); *see also Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995) ("Ordinarily[,] when a regulation is not promulgated in compliance with the APA, the regulation is invalid.").

Vacatur and remand will afford the Department an opportunity to reissue the Notice of Proposed Rulemaking, with references to a complete record, thereby allowing the public an opportunity to comment on the sources upon which the Department relies. *Penobscot Indian Nation*, 539 F. Supp. 2d at 54. Because the Department "must consider and respond to" such comments, *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 96 (2015), following the proper procedures "could" alter the outcome of the Department's rulemaking. For example, the Department might conclude that it should seek to reinstate the Memorandum of Understanding with the Social Security Administration ("SSA"). Alternatively, the Department might decide to

amend the 2014 Gainful Employment Rule to use a different source of annual earnings data.[5] There are, of course, still other ways the Department might respond. To suggest otherwise is tantamount to a complete rejection of the purpose of the notice and comment process—*i.e.*, to promote reasoned decision-making and ensure that an agency does not "operate with a one-sided or mistaken picture of the issues at stake"—turning rulemaking into "mere bureaucratic sport." *Conn. Light & Power Co.*, 673 F.2d at 530; *see also*, *e.g.*, *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1909 (2020) (noting that the APA's "[p]rocedural requirements . . . serve[] important values of administrative law . . . by ensuring that parties and the public can respond fully and in a timely manner to an agency's exercise of authority.").[6]

---

[5]      In the Repeal, the Department stated that it "was unaware at the time of negotiated rulemaking and publication of the notice of proposed rulemaking that SSA would not renew the MOU." 84 Fed. Reg. at 31,392–93. For that reason, the Department did not "seek comment on" the "potential use of earnings data from the Internal Revenue Service (IRS) or the Census Bureau to calculate D/E rates." 84 Fed. Reg. at 31,393. The Department further stated that "switching to IRS or Census Bureau data for the purpose of calculating the D/E rates would require additional negotiated rulemaking." 84 Fed. Reg. at 31,393. In other words, if the Repeal is vacated, the Department could—by its own admission—seek comment on other sources of earnings data.

[6]      Vacatur redresses AFT Plaintiffs' injuries for other reasons. As argued previously— although unaddressed by the Court—vacatur of the Repeal would immediately reinstate the "warnings" that institutions must provide to students for GE programs that failed the 2015 debt-to-earnings rates. *See* AFT Pls.' Opp. to MTD at 18–19 (citing 34 C.F.R. § 668.401(a)(2)(i)). Those warnings are provided individually to prospective students before enrollment and expressly inform them that a program "has not passed standards established by the U.S. Department of Education." *Id.* Following vacatur, institutions offering failing GE programs would be required to provide these warnings immediately, thus mitigating students' risk of attending sub-optimal programs.

1   Defendants nevertheless contend that it is impossible for proper notice and comment to

2   alter the Department's actions. Defs.' Mot. at 16. To be sure, this was the case in *Salmon*

3   *Spawning & Recovery Alliance v. Gutierrez*, upon which Defendants chiefly rely. There, the

4   plaintiffs alleged that the National Marine Fisheries Service ("NMFS") violated procedural

5   requirements when issuing a biological opinion that was a precondition for the U.S. Department

6   of State to enter into a treaty with Canada. 545 F.3d 1220, 1227 (9th Cir. 2008). Although the

7   Ninth Circuit recognized that it had the power to set aside a procedurally defective biological

8   opinion, it lacked the authority to order the Department of State to withdraw from the treaty

9   because the Executive Branch "has the exclusive power to conduct foreign relations[.]" *Id.* at

10  1226. In other words, even if the Court "g[a]ve the groups the remedy that they s[ought]," *i.e.*, an

11  order that NMFS follow proper procedures, "the ultimate agency decision of whether to enter

12  into the Treaty with Canada, made nine years ago, could never be influenced." *Id.* at 1227.

13  This case is not like *Salmon Spawning*. AFT Plaintiffs need not establish that SSA data

14  will be provided in the future, nor that Defendants can implement aspects of the Gainful

15  Employment Rule without it. Rather, AFT Plaintiffs need to allege only that their procedural

16  injury will be redressed by the correct procedures being applied. *See Massachusetts*, 549 U.S. at

17  517–18; *Sugar Cane Growers Coop. of Fla.*, 289 F.3d at 94–95; *see also, e.g.*, *Pit River Tribe v.*

18  *U.S. Forest Serv.*, 469 F.3d 768, 779 (9th Cir. 2006) ("The relief . . . requested will remedy

19  [plaintiffs'] harm. The procedural injury would be redressed if the agencies followed proper

20  procedures.") (citations omitted) (internal quotation marks omitted). That "is not a high bar to

21  meet." *Salmon Spawning*, 545 F.3d at 1227.

## CONCLUSION

23  For the foregoing reasons, Defendants' Motion for Partial Reconsideration should be

24  denied.

25                              By:    /s/ Daniel A. Zibel
                                       DANIEL A. ZIBEL
26

27  October 22, 2020                    *Counsel for Plaintiffs*