1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

SAN JOSE DIVISION

7

8   AMERICAN FEDERATION OF TEACHERS, et al.,

Case No.   5:20-cv-00455-EJD

9
Plaintiffs,

Re: Dkt. No. 38

10

v.

11

MIGUEL CARDONA, et al.,

12
Defendants.

Case No.   5:20-cv-01889-EJD

13   PEOPLE OF THE STATE OF CALIFORNIA,

Re: Dkt. No. 34

14
Plaintiff,

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL RECONSIDERATION**

15

v.

16

MIGUEL CARDONA, et al.,

17
Defendants.

18

19        These actions filed against the United States Department of Education ("DOE") and its

20   Secretary, Miguel Cardona (collectively "Defendants")[1] involve challenges under the

21   Administrative Procedure Act ("APA") to a final rule issued by Defendants in 2019 (the "2019

22   Rescission Rule").  Presently before the Court is the Defendants' motion for partial

23   reconsideration of the Court's order granting in part and denying in part Defendants' motions to

24   dismiss under Federal Rule of Civil Procedure 12(b)(1).  Having read the papers filed by the

25

26   [1] Miguel Cardona is the current Secretary of the United States Department of Education, and he is therefore substituted for Betsy Devos as the proper defendant pursuant to Federal Rule of Civil Procedure 25(d).

27   Case Nos.: 5:20-cv-00455-EJD; 5:20-cv-01889-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL RECONSIDERATION

1  parties and carefully considered their arguments and the relevant legal authority, the Court hereby

2  rules as follows.[2]

3  **I.  BACKGROUND**

4  In its order granting in part and denying in part the motions to dismiss, the Court discussed

5  the background facts in detail.  The Court will not repeat that discussion here and assumes

6  familiarity with it.  At a high level, these cases follow the DOE's decision to rescind regulations

7  promulgated in 2014 (the "GE Rule").  The regulations relate to Title IV of the Higher Education

8  Act of 1965 ("HEA") and were designed to counteract the deceptive marketing practices that

9  certain for-profit postsecondary institutions used to entice students to take on large amounts of

10  debt to pursue worthless degrees or credentials.  *See Program Integrity: Gainful Employment*, 79

11  Fed. Reg. 64,890 (Oct. 31, 2014).  The final GE Rule subjected all GE Programs to an affirmative

12  disclosure duty (the "Disclosure Requirement") and (2) would punish those GE Programs that

13  regularly left low-income graduates with overwhelming debt loads (the "Eligibility Framework").

14  *See Ass'n of Priv. Sector Colleges. & Universities. v. Duncan*, 110 F. Supp. 3d 176, 182-83

15  (D.D.C. 2015).

16  On January 22, 2020, the American Federation of Teachers ("AFT"), California Federation

17  of Teachers ("CFT"), and Individual Plaintiffs Isai Baltezar and Julie Cho (collectively "AFT

18  Plaintiffs") filed an action alleging that the 2019 Rescission Rule harmed them and impaired the

19  organizations' ability to fight for the financial rights of its members.  *See* Complaint for

20  Declaratory and Injunctive Relief ("AFT Compl."), Dkt. No. 1 ¶¶ 22, 53.  The AFT Plaintiffs'

21  action was soon followed by another action filed by the State of California on behalf of its

22  citizens.  *See* Complaint for Declaratory and Injunctive Relief ("Cal. Compl."), Dkt. 1.  The AFT

23  Plaintiffs set forth eleven separate counts, each of which raised claims related to the Disclosure

24  Requirements and/or Eligibility Framework.  AFT Compl. ¶¶ 350-446.  California based its claim

25

26

27

28

[2] The Court took this motion under submission without oral argument pursuant to Civil Local Rule 7-1(b).

United States District Court
Northern District of California

1  on both the GE Rule's Disclosure Requirements and Eligibility Framework.  Cal. Compl. ¶¶ 130-

2  143.

3          In each action, Defendants filed motions to dismiss for lack of standing.  *See* Defendants'

4  Motion to Dismiss ("AFT MTD"), Dkt. 26; Defendants' Motion to Dismiss ("Cal. MTD"), Dkt.

5  18.  Defendants argued the AFT Plaintiffs failed to identify cognizable injuries fairly traceable to

6  the 2019 Rescission Rule and could not establish that their Disclosure Requirements and

7  Eligibility Framework based claims were redressable.  AFT MTD at 11-23.  In response to

8  California's action, Defendants focused on the State's alleged cognizable injuries and the

9  redressability of its sole claim.  *See* Cal. MTD at 11.  Following a hearing, the Court issued a

10  combined order granting in part and denying in part the motions to dismiss.  AFT Dkt. No. 33;

11  Cal. Dkt. No. 29.

12          Defendants now seek reconsideration of two aspects of the Court's Order.  *See* Mot. for

13  Partial Reconsideration ("Mot."), AFT Dkt. No. 38; Cal. Dkt. No. 34.  First, Defendants argue the

14  Court erred in finding that the AFT Plaintiffs had standing to assert the violation of a procedural

15  right in Count 11 of their complaint.  Second, Defendants contend that the Court erred in finding

16  that California had plead a procedural harm and therefore had standing to assert its claim.

## II.    LEGAL STANDARD

18          Motions for reconsideration are disfavored and "should not be granted, absent highly

19  unusual circumstances, unless the district court is presented with newly discovered evidence,

20  committed clear error, or if there is an intervening change in the controlling law."  *McDowell v.*

21  *Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (per curiam) (internal quotation and citation

22  omitted).  Furthermore, "[a] motion for reconsideration 'may not be used to raise arguments or

23  present evidence for the first time when they could reasonably have been raised earlier in the

24  litigation.'"  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th

25  Cir. 2009) (quoting *Kona Enterprises, Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).

26          In this district, a Rule 54(b) motion for reconsideration must satisfy additional

27

28  Case Nos.: 5:20-cv-00455-EJD; 5:20-cv-01889-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL
RECONSIDERATION

3

1  requirements, set forth in Civil Local Rule 7-9(b).  Specifically, reconsideration may be sought

2  only if one of the following circumstances exists: (1) a material difference in fact or law from that

3  presented to the Court prior to issuance of the order that is the subject of the motion for

4  reconsideration; (2) new material facts or a change of law occurring after issuance of such order;

5  or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments that

6  were presented to the Court before issuance of such order.  Civ. L.R. 7-9(b).

**III.    DISCUSSION**

Defendants have filed their motion for partial reconsideration pursuant to Civil Local Rule

7-9(b)(3), thus arguing that reconsideration is warranted based on a manifest failure by the Court

to consider material facts or dispositive legal arguments.  The Court concludes that Defendants

have not established grounds for reconsideration of the Court's Order as to the AFT Plaintiffs.

However, reconsideration is warranted as to California's procedural claim.

**A.    AFT Plaintiffs' Count 11**

With respect to Count 11 in the AFT Plaintiffs' complaint, Defendants argue that the Court

erred by not considering their dispositive standing arguments after concluding that Count 11

qualified as a procedural claim.  AFT Mot. at 14.  The AFT Plaintiffs maintain that Defendants

deprived them of an adequate opportunity to comment before Defendants' rescission of the

Eligibility Framework.  *See* AFT Compl. ¶ 445; *see also id.* ¶ 446 ("By failing to provide adequate

notice and comment, the Department has violated the APA's procedural requirements, 5 U.S.C. §

553, and, as a result, has acted in a manner that is arbitrary, capricious, and contrary to law within

the meaning of APA, 5 U.S.C. ¶ 706.").  Defendants are not seeking reconsideration on the

question of whether Count 11 should be assessed pursuant to a procedural standing analysis.

Rather, Defendants contend the Court should reconsider and dismiss AFT Plaintiffs' Count 11,

since they lack the concrete interest necessary to assert a procedural rights claim and have not

established that the claim is redressable.

As an initial matter, Defendants failed to raise these arguments in their motion to dismiss

United States District Court
Northern District of California

1 or reply briefing.  Indeed, Defendants omitted a challenge to the procedural claim altogether in

2 their motion to dismiss.  *See generally* AFT MTD.  It was only after the AFT Plaintiffs argued in

3 their opposition that Count 11 asserted a procedural injury, that Defendants addressed the issue in

4 their reply brief.  Defendants, however, did not contend that the AFT Plaintiffs lacked a concrete

5 interest or that Count 11 was not redressable.  Defendants challenged whether the AFT Plaintiffs

6 had suffered a procedural injury when the DOE failed to disclose relevant research and analysis

7 used as part of its decision to rescind the GE Rule.  *See* AFT Reply, Dkt. No. 28 at 12-13.

8 Because Defendants could have also raised these additional arguments in its briefing on the

9 motion to dismiss, this Court need not consider them on a motion for reconsideration.  *Marlyn*

10 *Nutraceuticals, Inc.*, 571 F.3d at 880 ("A motion for reconsideration may not be used to raise

11 arguments or present evidence for the first time when they could reasonably have been raised

12 earlier in the litigation" (internal quotation and citation omitted)).

13        Even if the Court were to consider the arguments, they are not persuasive when applying

14 the procedural standing analysis to Count 11.  "To establish an injury-in-fact, a plaintiff

15 challenging the violation of a procedural right must demonstrate (1) that he has a procedural right

16 that, if exercised, could have protected his concrete interests, (2) that the procedures in question

17 are designed to protect those concrete interests, and (3) that the challenged action's threat to the

18 plaintiff's concrete interests is reasonably probable."  *California v. Azar*, 911 F.3d 558, 570 (9th

19 Cir. 2018) (citing *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 975 (9th Cir.

20 2003)).  "[T]he procedural standing doctrine 'does not—and cannot—eliminate any of the

21 'irreducible' elements of standing[.]'"  *Ctr. for L. & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1157

22 (D.C. Cir. 2005) (quoting *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 664 (D.C. Cir. 1996)).  It

23 does, however, "relax[ ] the immediacy and redressability requirements."  *Id.*; *see also*

24 *Massachusetts v. E.P.A.*, 549 U.S. 497, 517–18 (2007) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S.

25 555, 572 n.7 (1992) (internal citation omitted)).  As a result, in a procedural injury case, the

26 "litigant has standing if there is some possibility that the requested relief will prompt the injury-

27

United States District Court
Northern District of California

United States District Court
Northern District of California

1   causing party to reconsider the decision that allegedly harmed the litigant." *Id.*; *see also Sugar*

2   *Cane Growers Co-op. of Fla. v. Veneman*, 289 F.3d 89, 94–95 (D.C. Cir. 2002) (requiring that

3   plaintiffs alleging procedural injuries "show that the procedural step was connected to the

4   substantive result").

5          Under a procedural standing analysis, the AFT Plaintiffs have established an injury-in-fact

6   related to the alleged harm.  The GE Rule directed the DOE to publish final debt-to-earnings rates

7   for various GE Programs and made it so any GE Program that might "become ineligible based on

8   its final [debt-to-earnings] rates measure for the next award year" would have to provide a specific

9   warning to students and prospective students detailing how the program had not passed standards

10  established by the DOE.  *See* 34 C.F.R. § 668.403(b); § 668.410(a)(1), 2(i) (2019).  The warning

11  also would have informed prospective students that there might be other similar (and presumably

12  less risky) programs available to them—even at different schools altogether."  *Ass'n of Private*

13  *Sector Colleges & Universities*, 110 F. Supp. 3d at 183 (citing 34 C.F.R. § 668.410(a)(2)).  The

14  2019 Rescission Rule, however, prevented this information from becoming available for

15  prospective students.  In doing so, the 2019 Rescission Rule created a reasonably probable threat

16  to the AFT members' concrete interest in utilizing information, like final debt-to-earning rates, to

17  compare debt and earnings information across institutions and programs.  The AFT Plaintiffs have

18  further alleged that absent this information, students such as Plaintiffs Baltezar and Cho, may

19  choose "sub-optimal" programs as they planned to pursue postsecondary education.  AFT Compl.

20  ¶¶ 51, 293.  Therefore, AFT Plaintiffs have established an injury-in-fact as to Count 11.

21         Moreover, "'the causation and redressability requirements are relaxed' once a plaintiff has

22  established a procedural injury."  *Azar*, 911 F.3d at 573 (quoting *Citizens for Better Forestry*, 341

23  F.3d at 975).  As such, both requirements are met here.  "The injury asserted is traceable to the

24  agencies issuing the [2019 Rescission Rule] allegedly in violation of the APA's requirements."

25  *Azar*, 911 F.3d at 573; *see also Citizens for Better Forestry*, 341 F.3d at 975 ("There is no dispute

26  about causation in this case, because this requirement is only implicated where the concern is that

27

28

1   an injury caused by a third party is too tenuously connected to the acts of the defendant.").  It is

2   further possible that Defendants decision to issue the 2019 Rescission Rule could have been

3   influenced if they had allowed the public to comment on the sources upon which the DOE relied

4   upon.[3]  *See Azar*, 911 F.3d at 571 ("The plaintiff need not prove that the substantive result would

5   have been different had he received proper procedure; all that is necessary is to show that proper

6   procedure could have done so"); *Citizens for Better Forestry*, 341 F.3d at 976 ("It is probable that

7   if the USDA had allowed Citizens to participate in its environmental review at some point, or had

8   complied with the ESA formal consultation requirement, this could have influenced its decision to

9   promulgate the 2000 Plan Development Rule").  Accordingly Defendants' motion for partial

10  reconsideration as to AFT Plaintiffs' Count 11 is denied.

### B.    California's Claim

12          Defendants next seek reconsideration of the Court's holding relating to California's alleged

13  procedural claim.  According to Defendants, the Court erred in allowing California's claim to

14  continue when it failed to account for the distinction between a procedural right conferred by

15  statute and the APA's judicial review provision in 5 U.S.C. § 706(2)(A).  Defendants also contend

16  the Court erred by allowing the claim to proceed after California failed to plead a concrete interest

17  and establish that its claim was redressable.

18          As an initial matter, this district court has previously rejected Defendants' argument that

19  California's APA § 706 challenges are not procedural claims subject to a procedural rights

20  standing inquiry.  In *California v. Bernhardt,* 460 F. Supp. 3d 875, 890 (N.D. Cal. 2020), the

[3] As explained by the AFT Plaintiffs, the DOE stated it "was unaware at the time of negotiated rulemaking and publication of the notice of proposed rulemaking that the Social Security Administration would not renew the MOU."  84 Fed. Reg. at 31,392–93.  For that reason, DOE did not "seek comment on" the "potential use of earnings data from the Internal Revenue Service (IRS) or the Census Bureau to calculate D/E rates." 84 Fed. Reg. at 31,393.  DOE further stated that "switching to IRS or Census Bureau data for the purpose of calculating the D/E rates would require additional negotiated rulemaking." 84 Fed. Reg. at 31,393.  Thus, if the 2019 Rescission Rule is set aside, it would allow the public an opportunity to comment on the sources upon which the DOE relies and Defendants the opportunity consider amending the GE Rule to use a different source of annual earnings data.

1   Court faced a similar challenge and concluded that where "plaintiffs allege that an agency's action

2   is arbitrary and capricious under § 706(2)(A) because of the agency's failure to follow the 'basic

3   procedural requirement' of providing a reasoned explanation, *Encino Motorcars, LLC v. Navarro*,

4   136 S. Ct 2117, 2121, 2125 (2016), a procedural standing analysis is appropriate.  *See also City &*

5   *Cty. of San Francisco v. Whitaker*, 357 F. Supp. 3d 931, 942 (N.D. Cal. 2018) (holding that

6   *Massachusetts*, 549 U.S. at 523 and *Encino Motorcars, LLC* "suggest that, at least where plaintiffs

7   allege that an agency's action is arbitrary and capricious under § 706(2)(A) because of the

8   agency's failure to follow the 'basic procedural requirement[ ]' of providing any reasoned

9   explanation whatsoever . . . a procedural standing analysis is appropriate" (emphasis omitted)).

10  The Court finds no reason to depart from this analysis and finds that it did not commit clear error

11  when considering California's claim under a procedural standing analysis.

12          Notwithstanding the alleged procedural harm, The Court finds California did not

13  demonstrate an injury-in-fact.  Although the procedural standing doctrine relaxes the immediacy

14  and redressability requirements, the injury-in-fact requirement, in contrast, is not relaxed and

15  applies just as it would in any other case.  *See Center for Law and Educ.*, *Ctr.* 396 F.3d at 1157.

16  That is because "deprivation of a procedural right without some concrete interest that is affected

17  by the deprivation . . . is insufficient."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009).

18  None of the alleged injuries that California says give rise to Article III standing to assert the APA

19  claim—*i.e.*, (1) standing under the Competitor-Standing Doctrine; (2) harm to the educational

20  mission of California's public colleges and universities; (3) fiscal harm; and (4) *parens patriae* or

21  third-party standing—suffices to establish standing here.

22          With respect to California's suggestion that they will face fiscal harms, a competitive

23  disadvantage, and/or an injury to California's educational and diversity mission if students

24  potentially choose failing GE Programs over its public colleges and universities, California has

25  presented, at most, a hypothetical scenario in which students would instead attend its public

26  schools absent the 2019 Rescission Rule.  California assumes that the failing GE Programs would

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    either cease to exist or that students would be discouraged to attend them, and that the students

2    who would have otherwise attended these programs would matriculate at state-run educational

3    institutions instead.[4]  But California has not shown that this "set of circumstances would

4    necessarily occur if the DOE had enforced the GE Rule.  And there are several significant links in

5    the chain of causation between the challenged actions of the DOE and the alleged impact . . . none

6    of which are guaranteed to happen."  *See Maryland v. United States Dep't of Educ.*, 474 F. Supp.

7    3d 13, 33 (D.D.C. 2020).

8         As the court recognized in *Maryland*, the chain of events that would have to take place in

9    order to compel the conclusion that California will experience its alleged injuries based on the

10   DOE's procedural violations has the following links: (1) students who are attending or are set to

11   attend failing GE Programs would have to choose not to attend (or would be unable to attend) the

12   GE Programs on the basis of the information that the GE Rule requires disclosed or the

13   designation that those programs receive from the DOE; (2) instead of abandoning the prospect of

14   higher education altogether, students who would have attended the GE Programs would have to

15   apply to state-run educational institutions; (3) the state-run educational institutions would have to

16   admit these students; (4) the students would have to choose to matriculate at a California public

17   college or university; and (5) the students' attendance at these institutions would have to enhance,

18   rather than detract from, California's finances and educational mission.  *See Maryland*, 474 F.

19   Supp. 3d at 33-34.  To actually suffer an injury due to the Doe's 2019 Rescission Rule, all five of

20

21   _____

22   [4] California also cited an economic injury—*i.e.*, the increased and wasted expenditures under its
     Cal Grant Program, which provides state-funded grants to students attending undergraduate degree
     or vocation programs at Title IV eligible schools— as the basis for its standing.  *California*, Dkt.
23   No. 22 at 17 (citing Cal. Compl. ¶¶ 95-105).  This injury, however, arises because California ties
     Cal Grant eligibility to Title IV eligibility and amended its Cal Grant criteria to incorporate the GE
24   Rule as well.  *Id.* at 17.  It appears that California has voluntarily opted to provide its residents
     with grants for educational purposes; California does not assert that federal law requires it to
25   provide such financial support.  Thus, it is a state law which serves as the "impetus for such
     unbounded expenditures" and a "self-inflicted wound, because it 'result[s] from decisions by
26   [California's] respective state legislature[]' to "yoke[]" its fiscs to the federal government's
     policies and law.  *See Maryland*, 474 F. Supp. 3d at 35 (citing Pennsylvania v. New Jersey, 426
27   U.S. 660, 664 (1976)).

     Case Nos.: 5:20-cv-00455-EJD; 5:20-cv-01889-EJD
28   ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL
     RECONSIDERATION

1    these steps would need to occur.  *Cf. Clapper v. Amensty Int'l USA*, 568 U.S. 398, 410 (2013)

2    (concluding that five links in a "chain of possibilities" is "highly attenuated").

3          The number of assumptions that are required to reach the conclusion that the DOE's

4    alleged APA violation will result in fiscal harms, a competitive disadvantage, and/or an injury to

5    California's educational and diversity mission make it difficult to characterize them as "certainly

6    impending."  *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (citation omitted).

7    Moreover, these particular injuries are contingent upon the independent decisions of third-party

8    students.  The Supreme Court has cautioned against such theories of standing, and has emphasized

9    the federal courts' "usual reluctance to endorse standing theories that rest on speculation about the

10   decisions of independent actors."  *Clapper*, 568 U.S. at 414.  Thus, to satisfy its burden of

11   establishing the "actual or imminent" nature of injuries, California relies on an attenuated chain of

12   reasoning that assumes third-party students would respond to the 2014 GE Rule in a particular

13   way.  The speculatory nature of these purported injuries, however, prevent a finding of an injury-

14   in-fact.  *See Clapper*, 568 U.S. at 411 (rejecting a purported injury as too speculative when the

15   "respondents merely speculate[d] and ma[d]e assumptions about" future events).

16         California's reliance on its citizens' loss of information about GE Programs' costs and

17   eligibility to assert *parens patriae* or other third party standing also does not suffice to establish

18   standing.  *See* Cal. Compl. ¶¶ 106-114, 115-128.  The Supreme Court has repeatedly maintained

19   that such *parens patriae* standing is unavailable against the federal government.  *Alfred L. Snapp*

20   *& Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 609-10 (1982); *see also Commonwealth*

21   *of Massachusetts v. Mellon*, 262 U.S. 447, 485-86 (1923).  Moreover, the Court finds for present

22   purposes, that the text of the APA does not serve as a "statutory override" to this principle.

23   Indeed, the "APA never explicitly mentions a state or state agency, much less expressly authorizes

24   a state entity to sue the federal government in their role as *parens patriae*."  *Maryland*, 474 F.

25   Supp. 3d at 44.  The text of the APA's judicial review provision also suggests that Congress did

26   not intend to authorize *parens patriae* lawsuits against the federal government since the act

United States District Court
Northern District of California

1    specifically states the "person" who is authorized to challenge an "agency action" in federal court

2    is one who has actually suffered a "legal wrong" at the hands of the agency.  5 U.S.C. § 702.  As

3    such, the APA "does not evince any 'special solicitude' toward state actions brought in *parens*

4    *patriae* to challenge federal administrative programs or actions."  *Maryland*, 474 F. Supp. 3d at 44

5    (citing *Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 181 (D.C. Cir. 2019)).

6            California also contends it should be permitted to pursue the rights of students and

7    prospective students whose educational success is "inextricably bound up" in the colleges' and

8    universities' capacity to recruit and teach them.  Cal. Reply, Dkt. No. 22 at 19.  Unlike recent

9    cases in which courts ruled that harm to public universities constitutes an injury in fact for the

10   purposes of standing, California has not asserted an actual injury to the public colleges and

11   universities themselves.  For example, in *Washington v. Trump*, the States of Minnesota and

12   Washington sought injunctive relief from an executive order refusing to admit refugees into the

13   United States from seven countries.  847 F.3d 1151, 1159 (9th Cir. 2017).  The court held that:

14   "(1) the Executive Order prevents nationals of seven countries from entering Washington and

15   Minnesota; (2) as a result, some of these people will not enter state universities, some will not join

16   those universities as faculty, some will be prevented from performing research, and some will not

17   be permitted to return if they leave."  *Washington*, 847 F.3d at 1161.  The Ninth Circuit found that

18   these injuries to the state universities gave the states standing to assert the rights of the students,

19   scholars, and faculty affected by the Executive Order.  *Id*. at 1160 (citing *Singleton v. Wulff*, 428

20   U.S. 106, 114-16 (1976)).

21           Here, in contrast to *Washington*, there is no concrete injury-in-fact required to give

22   California standing to assert the rights of students and prospective students.  As detailed above,

23   the most California alleges is that students who might theoretically attend its public colleges and

24   universities instead of a GE Program might not be able to make an informed decision.  California

25   simply does not allege a concrete interest and thus, the Court will grant Defendants' motion for

26   partial reconsideration as to California's claim.

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

IV.     **CONCLUSION**

For the foregoing reasons, Defendants' motion for partial reconsideration is **GRANTED** in part and **DENIED** in part.  On reconsideration, Defendants' motion to dismiss California's claim is **GRANTED** without leave to amend.  The additional conclusions outlined in the Court's order addressing Defendants' motions to dismiss shall remain undisturbed.

**IT IS SO ORDERED.**

Dated: September 29, 2021

EDWARD J. DAVILA
United States District Judge

Case Nos.: 5:20-cv-00455-EJD; 5:20-cv-01889-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL
RECONSIDERATION

12