BRIAN M. BOYNTON
Acting Assistant Attorney General
MARCIA BERMAN
Assistant Director, Federal Programs Branch
KATHRYN L. WYER (Utah Bar No. 9846)
U.S. Department of Justice, Civil Division
1100 L Street, N.W., Room 12014
Tel. (202) 616-8475
kathryn.wyer@usdoj.gov
*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF TEACHERS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MIGUEL CARDONA, in his official capacity as Secretary of Education, *et al.*, <br><br> Defendants. | Case No. 5:20-cv-455-EJD <br><br> **DEFENDANTS' NOTICE OF MOTION, MOTION FOR VOLUNTARY REMAND WITHOUT VACATUR, AND MEMORANDUM IN SUPPORT** <br><br> Date: March 24, 2022 <br> Time: 9:00 a.m. <br> Place: Courtroom 4, 5th Floor <br> Judge: Hon. Edward J. Davila. |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. iii

NOTICE OF MOTION AND MOTION FOR VOLUNTARY REMAND WITHOUT
    VACATUR AND DISMISSAL WITHOUT PREJUDICE ................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .........................................................1

INTRODUCTION ...................................................................................................................1

STATEMENT OF THE ISSUES .............................................................................................2

BACKGROUND .....................................................................................................................2

    I.    Procedural History ......................................................................................................2

    II.    Regulatory Developments...........................................................................................6

ARGUMENT ........................................................................................................................... 7

    I.    Legal Standard ............................................................................................................ 7

    II.    Voluntary Remand and Dismissal Without Vacatur Is Proper in This Case ......... 8

        A.    The Department Has Legitimate and Good Faith Grounds for Seeking
            Voluntary Remand ............................................................................................. 8

        B.    Granting Remand Conserves Judicial Resources ..................................... 13

        C.    Remand Without Vacatur Would Not Prejudice the Parties..................... 14

CONCLUSION.................................................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**

*All. for Wild Rockies v. Higgins*,
 No. 2:19-CV-00332-REB, 2021 WL 1630546 (D. Idaho Apr. 27, 2021) ........................10

*Allied–Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146 (D.C. Cir. 1993) ..10, 12

*Am. Ass'n of Cosmetology Schs v. DeVos ("AACS")*, 258 F. Supp. 3d 50 (D.D.C. 2017) .........3

*Am. Forest Res. Council v. Ashe*, 946 F. Supp. 2d 1 (D.D.C. 2013) ......................13

*Am. Petroleum Inst. v. EPA*, 683 F.3d 382 (D.C. Cir. 2012) ......................9

*Ass'n of Private Sector Colls. & Univs. v. Duncan ("APSCU II")*,
 110 F. Supp. 3d 176 (D.D.C. 2015) ......................3

*Ass'n of Proprietary Colls. v. Duncan ("APC")*, 107 F Supp. 3d 332 (S.D.N.Y. 2015) .............3

*B.J. Alan Co. v. ICC*, 897 F.2d 561 (D.C. Cir. 1990) ......................13

*Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989 (9th Cir. 2012) ........................7, 8, 10, 12, 15

*City of Los Angeles v. Dickson,* No. 19-71581, 2021 WL 2850586 (9th Cir. July 8, 2021) .....12

*Ethyl Corp. v. Browner*, 989 F.2d 522 (D.C. Cir. 1993) ......................13

*FBME Bank Ltd. v. Lew*, 142 F. Supp. 3d 70 (D.D.C. 2015) ..........................7, 9, 14

*FCC v. Fox Tele. Stations, Inc.*, 556 U.S. 502 (2009) ...........................7, 9

*Int'l Union, United Mine Workers v. Fed. Mine Safety & Health Admin.*,
 920 F.2d 960 (D.C. Cir. 1990) ......................8

*Limnia, Inc. v. Dep't of Energy*, 857 F.3d 379 (D.C. Cir. 2017) .................................7

*Loc. Joint Exec. Bd. of Las Vegas v. NLRB*, 840 F. App'x 134 (9th Cir. 2020) ........................12

*Maryland v. U.S. Dep't of Educ.*, 474 F. Supp. 3d 13, 19 (D.D.C. 2020), *vacated on other grounds*, 2020 WL 7868112 (D.C. Cir. Dec. 22, 2020) ..............................11, 15

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ....................7

*Nat'l Ass'n of Home Builders v. EPA*, 682 F.3d 1032 (D.C. Cir. 2012) .....................9

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005) ...................7

*Nat'l Fam. Farm Coal. v. EPA*, 966 F.3d 893 (9th Cir. 2020) ......................................................10

*NRDC v. U.S. Dep't of Interior*, 275 F. Supp. 2d 1136 (C.D. Cal. 2002) ..........................7, 8, 13

*Neighbors Against Bison Slaughter v. Nat'l Park Serv.*,
    No. CV 19-128-BLG-SPW, 2021 WL 717094 (D. Mont. Feb. 5, 2021) .....................7, 12

*Pennsylvania v. ICC*, 590 F.2d 1187 (D.C. Cir. 1978) ...............................................................13

*Pub. Citizen Health Research Grp. v. Comm'r, FDA*, 740 F.2d 21 (D.C. Cir. 1984) .................9

*SKF USA, Inc. v. United States*, 254 F.3d 1022 (Fed. Cir. 2001) .........................................7, 8, 9

*United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*,
    No. C-09-4029 EMC, 2011 WL 3607790 (N.D. Cal. Aug. 16, 2011) ...............................7

*Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414 (D.C. Cir. 2018) ....................................9

*Waterkeeper All., Inc. v. EPA*,
    No. 18-CV-03521-RS, 2021 WL 4221585 (N.D. Cal. Sept. 16, 2021) .........................8, 10

*Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43 (D.C. Cir. 1999) .................................9

**STATUTES**

Title IV of the Higher Education Act ("HEA"), 20 U.S.C. §§ 1070 *et seq.* ................................2

Administrative Procedure Act, 5 U.S.C. §§ 701-706 ....................................................................2

**ADMINISTRATIVE MATERIALS**

Dep't of Educ., Final regulations,
    79 Fed. Reg. 64890 (Oct. 31, 2014) ("2014 Rule" or "2014 GE Rule") ................. *passim*

Dept. of Educ., Final regulations, 84 Fed. Reg. 31392 (July 1, 2019) ("2019 Rule") ....... *passim*

86 Fed. Reg. 28299 (May 26, 2021) .............................................................................................6

86 Fed. Reg. 54666 (Oct. 4, 2021) ................................................................................................6

# NOTICE OF MOTION AND MOTION FOR VOLUNTARY REMAND WITHOUT VACATUR AND DISMISSAL WITHOUT PREJUDICE

PLEASE TAKE NOTICE that on March 24, 2022, at 9:00 a.m., Defendants Miguel Cardona, in his official capacity as Secretary of Education, and the Department of Education ("Department"), by and through undersigned counsel, will, and hereby do, respectfully move the Court to remand this action to the Department without vacatur of the final rule at issue, 84 Fed. Reg. 31392 (July 1, 2019) (the "2019 Rule"), and to dismiss the remaining claims in this action without prejudice. This motion is made pursuant to Local Rules 7-1 and 7-2 before the Honorable Edward J. Davila, San Jose Courthouse, Courtroom 4.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Since a new Administration took office in January 2021, the Department has moved forward with its intent to conduct negotiated rulemaking to reconsider past rules, to include the 2019 Rule at issue here, in light of the Administration's policy goals. The likely outcome of this negotiated rulemaking process is that the Department will publish a notice of proposed rulemaking that would propose replacing the 2019 Rule with further regulation on gainful employment—the underlying subject of the 2019 Rule—and will then go through a new notice and comment rulemaking procedure. Accordingly, the Department requests that Plaintiffs' remaining claim here—asserting procedural error in the Department's promulgation of the 2019 Rule—be remanded to the Department. A remand would avoid unnecessary litigation in this

---

[1] Undersigned counsel for Defendants has conferred with counsel for Plaintiffs regarding the relief requested in this Motion. As stated in the parties' Joint Stipulation, ECF No. 45, "Plaintiffs have taken Defendants' position under consideration but have not yet finalized a decision regarding their position on Defendants' proposed remand." Joint Stip. at 3. Plaintiffs have indicated that they will set forth their position in either an opposition or a statement of nonopposition filed in response to this Motion. *See id.*

DEFENDANTS' NOTICE OF MOTION & MOTION TO REMAND & MEM. IN SUPPORT
Case No. 5:20-cv-455-EJD

1

Court over aspects of the 2019 Rule that will be reconsidered in a new rulemaking, would conserve the parties' limited resources, and would best serve the interest of judicial economy. In addition, remand would avoid requiring the Department to take positions on merits questions that might appear to pre-judge issues that will be reconsidered through negotiated and notice-and-comment rulemaking. Through the Department's administrative rulemaking processes, the Department will necessarily go through rulemaking procedures that will supersede the procedures that led to the promulgation of the 2019 Rule, and all members of the public, including Plaintiffs, will have the opportunity to submit comments and recommendations. The Department's promulgation of new rules may resolve Plaintiffs' concerns and in any case will moot the remaining claim presented in this litigation. This Court should follow the usual course here and allow a voluntary remand while dismissing this action without prejudice.

## STATEMENT OF THE ISSUES

Whether the Court should remand without vacatur the remaining claim in this action to the Department for consideration in the course of the Department's negotiated and notice-and-comment rulemaking processes already underway and dismiss the case without prejudice.

## BACKGROUND

### I. Procedural History

Plaintiffs—consisting of two organizations, the American Federation of Teachers ("AFT") and the California Federation of Teachers ("CFT"), and two individuals who are AFT and CFT members (collectively, "Plaintiffs")—filed this action on January 22, 2020, asserting eleven separate challenges under the Administrative Procedure Act ("APA") to the 2019 Rule, 84 Fed. Reg. 31392-10 (July 1, 2019). Compl. [ECF 1] ¶¶ 350-446. The 2019 Rule rescinded regulations promulgated in 2014, 79 Fed. Reg. 64890 (Oct. 31, 2014) ("2014 Rule" or "2014 GE Rule") that had identified new disclosure and eligibility requirements for certain programs to be able to provide their students with grants and loans under Title IV of the Higher Education Act ("HEA"). The 2014 Rule's requirements had applied to certain regulated programs that the HEA defined as leading to "gainful employment" ("GE"). The 2014 Rule's mechanism for seeking to

measure a program's ability to prepare students for gainful employment, and to adjust the program's Title IV eligibility accordingly, relied on annual calculations of GE programs' debt-to-earnings ("D/E") rates that compared aggregate earnings for a program's graduates to the average educational debt calculated by the Department for those students. The 2014 Rule required at least two years of data before any failing GE program would be deemed ineligible.

The 2014 Rule faced a number of legal challenges. The 2014 Rule was upheld in *Ass'n of Private Sector Colls. & Univs. v. Duncan*, 110 F. Supp. 3d 176, 185-86 (D.D.C. 2015)*;* and *Ass'n of Proprietary Colls. v. Duncan*, 107 F Supp. 3d 332, 363 (S.D.N.Y. 2015); but the court in *Am. Ass'n of Cosmetology Schs v. DeVos* ("*AACS*"), 258 F. Supp. 3d 50, 76 (D.D.C. 2017), struck down parts of the 2014 Rule related to the appeal process. That led to delays in implementation. In addition, after the first year's D/E rates were calculated, the Social Security Administration ("SSA") stopped providing the Department with data that the 2014 Rule required for the D/E calculations. *See* 84 Fed. Reg. at 31392 (explaining that SSA did not sign a new Memorandum of Understanding with the Department to share earnings data, and that, as a result, "the Department is currently unable to calculate D/E rates"); cf. 2014 GE Rule, 79 Fed. Reg. 64890, 65009 (Oct. 31, 2014) (requiring Secretary to use data from SSA in D/E rate calculation). Thus, no GE program ever lost Title IV eligibility under the 2014 Rule.

Plaintiffs' suit sought to vacate the 2019 Rule, thus reinstating the 2014 Rule. Compl. at 121. Defendants moved to dismiss for lack of standing, arguing among other things that none of Plaintiffs' claims were redressable. Def. MTD [ECF 25]. For purposes of its arguments on standing, Defendants' motion divided Plaintiffs' claims into two categories—the Disclosure Claims (Count 4, as well as Counts 1-3 in part), challenging the rescission of the 2014 Rule's imposition of certain disclosure requirements on schools; and the Eligibility Claims (Counts 5-11, as well as Counts 1-3 in part), challenging the 2019 Rule's rescission of the 2014 Rule's framework for determining programs' Title IV eligibility. Def. MTD at 10-11. In response, Plaintiffs argued that Count 11—which alleged that the Department had failed to identify sources or provide documentation of its "analyses" underlying the rescission of the 2014 Rule's D/E rates-based eligibility framework, Compl. ¶¶ 442-46—was subject to a separate procedural

standing analysis. Pl. Opp. [ECF 27] at 22. In their reply, Defendants argued that Count 11 merely mischaracterized words and phrases in the 2019 Rule and thus failed to identify a genuine procedural injury that could properly be subject to a procedural standing analysis. Def. MTD Reply [ECF 28] at 12-13.

In its ruling on Defendants' motion to dismiss, the Court held that Plaintiffs' Disclosure Claims and Eligibility Claims—with the exception of Count 11—should be dismissed for lack of standing. *See* Order of Sept. 3, 2020 [ECF 33], at 17, 20, 22. The Court first held that Plaintiffs lacked standing to assert the Disclosure Claims because they had failed to identify a cognizable informational injury that was redressable by the Court. *Id.* at 16-17. The Court then held that the Eligibility Claims, aside from Count 11, were not redressable due to the unavailability of SSA data. *Id.* at 19-20. The Court held that Count 11 could proceed because Plaintiffs had adequately alleged a procedural claim. *Id.* at 22.[2]

---

[2] Because Counts 1-3 purported to identify Department errors that allegedly affected the 2019 Rule's rescission of both the disclosure provisions and the eligibility provisions in the 2014 Rule, *see* Compl. ¶¶ 350-374, Defendants identified Counts 1-3 as both Disclosure Claims and Eligibility Claims in their motion to dismiss, and their arguments that Plaintiffs lacked standing encompassed Counts 1-3. Def. MTD at 10-11. Plaintiffs never contested that point in opposition to Defendants' motion, and the Court's reasoning in dismissing the Disclosure Claims and Eligibility Claims also encompasses Counts 1-3. Nevertheless, as reflected in the parties' joint case management statement [ECF 35], filed on September 21, 2020, Plaintiffs appear to dispute whether the Court's dismissal of all substantive claims included Counts 1-3. *See* CMC Statement at 3-4. However, Defendants moved to dismiss all of Plaintiffs' claims, and unlike the case with Count 11, Plaintiffs never argued, nor did the Court hold, that Counts 1-3 warranted a different standing analysis. Plaintiffs cite the Court's citations in the section of its order recognizing the distinct nature of the underlying Disclosure Requirements and Eligibility Framework in the 2014 Rule. *See id.* at 3 (citing Order of Sept. 3, 2020, at 13). But although the two rescinded regulatory regimes were distinct, Counts 1-3 asserted errors that allegedly applied to rescission of both.

1    Defendants sought reconsideration of the Court's ruling with respect to Count 11, arguing that Plaintiffs failed to establish a concrete interest at stake, and that Count 11—which relates solely to the 2019 Rule's rescission of the 2014 Rule's eligibility framework—was not redressable, even under a procedural standing analysis, due to the unavailability of SSA data. Def. Mot. for Partial Reconsideration [ECF 38], at 14, 16-17. However, the Court denied Defendants' motion in relevant part. Order of Sept. 29, 2021 [ECF 44], at 7. The Court recognized that the Department would have to engage in additional negotiated rulemaking before using any data source other than SSA data for eligibility calculations but reasoned that such rulemaking could take place if the 2019 Rule were set aside. *Id.* at 7 n.3 ("if the 2019 Rescission Rule is set aside, it would allow the public an opportunity to comment on the sources upon [which] the DOE relies and Defendants the opportunity [to] consider amending the GE Rule to use a different source of annual earnings data"). The Court thus concluded that Count 11 satisfied the applicable "relaxed" redressability standard for procedural claims. *See id.*

Now that the Court has ruled that it has subject matter jurisdiction over Count 11, the parties would normally proceed to cross-motions for summary judgment based on the administrative record. However, as described below, the Department has begun new negotiated rulemaking processes that will address GE issues in the coming months. Following negotiated rulemaking, the Department anticipates issuing a notice of proposed rulemaking under the APA, thus initiating a new APA rulemaking procedure and the potential promulgation of new rules that would supersede the 2019 Rule at issue here.

---

Counts 1 and 2 focused on the Department's statutory authority underlying *both* regimes, Compl. ¶¶ 350-364, and Count 3 alleged that *both* rescissions relied on impermissible factors, *id.* ¶¶ 365-373. These combined claims were thus necessarily encompassed by the Court's dismissal of both the Disclosure Claims and Eligibility Claims. Although the Court has not addressed the dispute identified in the CMC Statement, the record is clear that Count 11 is the only remaining claim in the case.

## II. Regulatory Developments

While Plaintiffs' standing with respect to Count 11 remained under consideration by the Court, a new Administration took office on January 20, 2021. Since then, the Department has initiated a process to undertake new rulemaking in order to reconsider various issues in conformance with the new Administration's policy goals. On May 26, 2021, the Department announced its intent to establish negotiated rulemaking committees. 86 Fed. Reg. 28299 (May 26, 2021). Gainful employment was among the topics for regulation suggested by the Department. *See id.* at 28300. On August 10, 2021, the Department announced that it was establishing the Affordability and Student Loans Committee to address seven of the 14 potential topics identified in its May 2021 notice for the negotiated rulemaking process. 86 Fed. Reg. 43609 (Aug. 10, 2021). On October 4, 2021, the Department announced its intent to convene a separate committee to develop proposed regulations affecting institutional and programmatic eligibility. 86 Fed. Reg. 54666, 54667 (Oct. 4, 2021). Gainful employment issues are among the topics that the Department intends to address in this separate committee. *See* Declaration of James Kvaal ("Kvaal Decl.") ¶ 11, attached hereto.

As things stand now, the D/E rates that the Department calculated for the 2015 Debt Measure Year remain the only D/E rates that were ever calculated under the 2014 Rule. *See* Def MTD at 7-8. The Department continues to have no Memorandum of Understanding in place with SSA that would allow it to obtain the SSA data necessary to implement the 2014 Rule, were it to be reinstated. Kvaal Decl. ¶ 9. And given the 2019 Rule's rescission of the 2014 Rule and the Department's obligation to allocate its resources appropriately to address its current operational needs, the Department has not maintained the operational systems that it had created to perform the D/E rate calculations. Kvaal Decl. ¶¶ 7-8. Should the 2019 Rule be vacated, and the 2014 Rule reinstated, the Department would have to devote considerable resources to figuring out how to go about implementing the 2014 Rule in the absence of any current capacity to do so, even though such efforts may ultimately prove futile, given the unavailability of SSA data and the possibility of a new rule, and would require the Department to divert resources from other Department activities. *Id.* ¶¶ 8-12.

# ARGUMENT

## I. Legal Standard

Agencies have the inherent power to reconsider, revise, replace, or repeal past decisions to the extent permitted by law and supported by a reasoned explanation. *FCC v. Fox Tele. Stations, Inc.*, 556 U.S. 502, 515 (2009); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983). Further, an agency's interpretation of a statute it administers is not "carved in stone" but must be evaluated "on a continuing basis," for example, "in response to . . . a change in administrations." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005) (internal quotation and citations omitted). Voluntary remand is proper where an agency requests a "'remand (without confessing error) in order to reconsider its previous position.'" *United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, No. C-09-4029 EMC, 2011 WL 3607790, at *3 (N.D. Cal. Aug. 16, 2011) (quoting *SKF USA, Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001)). Voluntary remand also "promotes judicial economy" by allowing agencies to reconsider prior decisions "without further expenditure of judicial resources." *NRDC v. U.S. Dep't of Interior*, 275 F. Supp. 2d 1136, 1141 (C.D. Cal. 2002).

"Generally, courts only refuse voluntarily requested remand when the agency's request is frivolous or made in bad faith." *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012). "[I]f the agency's concern is substantial and legitimate, a remand is usually appropriate." *Neighbors Against Bison Slaughter v. Nat'l Park Serv.*, No. CV 19-128-BLG-SPW, 2021 WL 717094, at *2 (D. Mont. Feb. 5, 2021) (quoting *SKF*, 254 F.3d at 1029); *see also Limnia, Inc. v. Dep't of Energy*, 857 F.3d 379, 386 (D.C. Cir. 2017) (holding that remand should be granted so long as "the agency intends to take further action with respect to the original agency decision on review"). In exercising its discretion to grant remand, a court may consider whether any party opposing remand would be unduly prejudiced. *FBME Bank Ltd. v. Lew*, 142 F. Supp. 3d 70, 73 (D.D.C. 2015).

Moreover, a court need not vacate the agency action at issue in a case when granting a voluntary remand. Indeed, even where an agency rule is held to be arbitrary and capricious, the

determination of whether to vacate the rule depends in part on "the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed." *NRDC*, 275 F. Supp. 2d at 1143 (quoting *Int'l Union, United Mine Workers v. Fed. Mine Safety & Health Admin.*, 920 F.2d 960, 967 (D.C. Cir. 1990)). In *Waterkeeper All., Inc. v. EPA*, No. 18-CV-03521-RS, 2021 WL 4221585 (N.D. Cal. Sept. 16, 2021), where the agency did not concede the challenged rule was "legally impermissible" but was "reconsidering the rule for policy reasons," the court granted the government's request for voluntary remand and dismissal while deeming "unpersuasive" the plaintiffs' arguments in favor of vacatur. *Id.* at *1 (noting, however, that the issue of whether to vacate was moot because another court had already vacated the rule).

## II. Voluntary Remand and Dismissal Without Vacatur Is Proper in This Case

Remand is proper in this case because the Department has already initiated a process of negotiated rulemaking that will allow GE issues to be considered anew, with new opportunities to address relevant research and analyses, such as that at issue in Count 11, taking into account public participation and comment through the Department's established mechanisms for negotiated and notice-and-comment rulemaking.

### A. The Department Has Legitimate and Good Faith Grounds for Seeking Voluntary Remand

An agency may seek remand because it wishes to revisit its interpretation of the governing statute, the procedures it followed in reaching its decision, or the decision's relationship to other agency policies. *SKF*, 254 F.3d at 1028–29. "Generally, courts only refuse voluntarily requested remand when the agency's request is frivolous or made in bad faith." *Cal. Cmtys.*, 688 F.3d at 992. The Department seeks remand for the exact reasons identified in *SKF*, and its request is neither frivolous nor made in bad faith. The new Administration "identified substantial policy concerns with the 2019 Rule's rescission of the 2014 GE Rule and determined that additional consideration should be given to this issue." Kvaal Decl. ¶ 11. The Department has already initiated a process of revisiting certain issues that have been the subject of ongoing regulation—including GE, the issue central to the 2019 Rule as well as the 2014 Rule that it

rescinded. *See id.* The Department seeks remand because its further rulemaking on the subject of GE, which it anticipates will involve both negotiated and notice-and-comment rulemaking on the subject, will address the very concerns that Plaintiffs have alleged with respect to the past notice and comment procedures that resulted in the 2019 Rule. The Department therefore wishes to avoid unnecessary litigation. It also seeks to avoid the need to take positions in litigation that could be viewed as pre-judging issues that may arise in the course of negotiated and notice-and-comment rulemaking.

Remand would also allow the Department to develop a new administrative record, which would benefit the Court and the parties if a new rule were to be litigated. "[T]his kind of reevaluation is well within an agency's discretion," *Nat'l Ass'n of Home Builders v. EPA*, 682 F.3d 1032, 1038 (D.C. Cir. 2012) (citing *Fox Tele. Stations, Inc.*, 556 U.S. at 514–15), and courts should allow it. *See Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018).

Moreover, deferring to the Department's new rulemaking process also promotes important jurisprudential interests. "In the context of agency decision making, letting the administrative process run its course before binding parties to a judicial decision prevents courts from 'entangling themselves in abstract disagreements over administrative policies, and . . . protect[s] the agencies from judicial interference' in an ongoing decision-making process." *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2012) (citation omitted). Allowing the administrative process to run its course here will let the Department "crystalliz[e] its policy before that policy is subjected to judicial review," *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 49 (D.C. Cir. 1999), and avoid "inefficient" and unnecessary "piecemeal review." *Pub. Citizen Health Research Grp. v. Comm'r, FDA*, 740 F.2d 21, 30 (D.C. Cir. 1984) (citation and internal quotation omitted).

Courts have granted remand in similar situations. In *SKF USA Inc.*, the Federal Circuit found a remand to the Department of Commerce appropriate in light of the agency's change in policy. 254 F.3d at 1025, 1030. Likewise, in *FBME Bank Ltd.*, the District Court for the District of Columbia remanded a rule to the Department of the Treasury to allow the agency to address "serious 'procedural concerns,'" including "potential inadequacies in the notice-and-comment

process as well as [the agency's] seeming failure to consider significant, obvious, and viable alternatives." 142 F. Supp. 3d at 73. In *Waterkeeper All., Inc.*, a member of this court also granted remand where the agency did not concede the challenged rule was "legally impermissible" but was "reconsidering the rule for policy reasons." *Waterkeeper All., Inc.*, 2021 WL 4221585, at *1. The Department's request here for voluntary remand in light of new rulemaking that has been initiated due to shifts in Administration policy is in good faith and consistent with its actions outside this litigation.

The Department is not requesting vacatur of the 2019 Rule during the remand. Courts have the discretion to remand an agency decision without vacatur. *Cal. Cmtys.*, 688 F.3d at 992. Factors a court can consider include the seriousness of the rule's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of granting vacatur when an interim change may itself be changed. *Id.* (citing *Allied–Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993)). Here, the Court has not addressed the merits of Plaintiffs' Count 11, or any other challenge to the 2019 Rule, and only Count 11, which was limited to an allegation of procedural error in the notice and comment process relating to the rescission of the 2014 Rule's eligibility provisions, remains at issue. Even if Plaintiffs were to prevail in Count 11, the question of whether any such procedural error— which would affect only part of the 2019 Rule (its rescission of the eligibility provisions)— would warrant vacatur of that portion of the Rule as a remedy under the APA would depend on a similar balancing of factors in light of the nature of the error that was identified. *Nat'l Fam. Farm Coal. v. EPA*, 966 F.3d 893, 929 (9th Cir. 2020) (remanding without vacatur where agency's error was not deemed "serious"). Indeed, a procedural error of the kind alleged in Count 11 presents a situation where, even if Plaintiffs were to prevail, "the seriousness of the [Department's] errors [may be] unknown," which "weighs heavily against vacatur." *All. for Wild Rockies v. Higgins*, No. 2:19-CV-00332-REB, 2021 WL 1630546, at *16 (D. Idaho Apr. 27, 2021) (remanding without vacatur where the agency's error consisted of a failure to explain).

But even if there remains some potential, should the case be litigated to conclusion, for a finding that all or a portion of the 2019 Rule contained serious deficiencies, vacatur would prove

of no benefit to Plaintiffs and would cause significant disruption to the Department and its operation, including its ability to re-regulate on this very topic. For one thing, vacatur of the portion of the 2019 Rule at issue in Count 11 would reverse its rescission of the 2014 Rule's eligibility framework. In other words, the 2014 Rule's eligibility provisions would go back into effect, requiring the Department to resume its calculation of D/E rates for GE programs. But as this Court has recognized, the Department is unable to conduct those calculations as prescribed by the 2014 Rule—at least until new rulemaking is completed—due to the unavailability of SSA data. Order of Sept. 3, 2020, at 20; Order of Sept. 29, 2021, at 7 & n.3. In addition, the Department no longer has the operational systems in place to allow schools to report information about program charges used to calculate the average educational debt, nor for the Department to perform the average program debt calculations that were required for the D/E rate calculations under the 2014 Rule. Kvaal Decl. ¶¶ 7-8. Temporary reinstatement of the 2014 Rule, pending the Department's promulgation of a new rule, would force the Department to allocate scarce resources attempting to implement the 2014 Rule, even though implementation is not currently possible. *See id.* ¶¶ 8-10. Moreover, the Department would have to go through the multi-step process required for the D/E rate calculations under the 2014 Rule for two years, including the time required to allow for exhaustion of associated administrative appeals, before any GE program might conceivably lose Title IV eligibility under a reinstated 2014 Rule. *See id.* ¶ 4. The Department anticipates that a new rule may go into effect before this process could take place. *See id.* ¶ 10.

The Department would also likely have to expend further resources defending against lawsuits challenging the Department's steps taken to implement the 2014 Rule or its inability to implement. *See* Kvaal Decl. ¶ 12; *cf. Maryland v. U.S. Dep't of Educ.*, 474 F. Supp. 3d 13, 19 (D.D.C. 2020) (describing claims based on Department's alleged failure to implement 2014 Rule), *vacated on other grounds*, 2020 WL 7868112 (D.C. Cir. Dec. 22, 2020). In this respect, the situation here is similar to that in *California Communities Against Toxics*, where the Ninth Circuit decided against vacatur in light of its disruptive potential to "pave the road to legal

challenges" that might further interfere with agency operations. *See Cal. Cmtys. Against Toxics*, 688 F.3d at 993.

Vacatur under the circumstances here would present a clear instance of "disruptive consequences of an interim change that may itself be changed." *Allied-Signal, Inc.*, 988 F.2d at 150-51. Indeed, the likelihood of further change is the reason that the Department is requesting remand. The Department has stated its intent to address GE issues through a new rulemaking. Rather than addressing what would be necessary to implement the 2014 Rule for the short time that it might be in effect, before being replaced by the result of the Department's current rulemaking effort, and responding to the legal challenges that would likely arise, the Department's resources are better spent on the rulemaking process itself, which will attempt to address GE issues in a sustainable manner.

Considering all these likely impacts of vacatur, the significant disruption that would result from the 2014 GE Rule becoming effective at this time justifies remand without vacatur. Courts in this Circuit, including the Court of Appeals, have declined to vacate agency actions in similar circumstances. *Cf. City of Los Angeles v. Dickson*, No. 19-71581, 2021 WL 2850586, at *3 (9th Cir. July 8, 2021) (remanding without vacatur, despite finding serious error, in light of disruptive consequences of vacating agency FAA arrival routes); *Loc. Joint Exec. Bd. of Las Vegas v. NLRB*, 840 F. App'x 134, 137–38 (9th Cir. 2020) (declining to vacate NLRB rule where court had already "vacated a previous version of this rule three times, and since then, the Board has already changed its approach to the issue twice, based on legitimate shifts in regulatory perspective," recognizing that "[t]he Board may change direction yet again," and that vacatur may "gratuitously undermine the stability of collective bargaining relationships"); *Neighbors Against Bison Slaughter,* 2021 WL 717094, at *3–4 (granting voluntary remand without vacatur where agency had explained that vacatur "would create significant confusion among the cooperating agencies" in regard to the annual bison hunt and "would also restrain ongoing efforts by the [bison hunt] committee to address many of the concerns raised by Plaintiffs"). The Department thus requests that the Court order a remand without vacatur.

### B. Granting Remand Conserves Judicial Resources

Granting remand here promotes judicial economy and conserves the parties' and the Court's resources. Courts "have recognized that '[a]dministrative reconsideration is a more expeditious and efficient means of achieving an adjustment of agency policy than is resort to the federal courts.'" *B.J. Alan Co. v. ICC*, 897 F.2d 561, 562 n.1 (D.C. Cir. 1990) (quoting *Pennsylvania v. ICC*, 590 F.2d 1187, 1194 (D.C. Cir. 1978)). Indeed, courts acknowledge that voluntary remand "promotes judicial economy" by allowing the agency to re-consider its own decision "without further expenditure of judicial resources." *NRDC,* 275 F. Supp. 2d at 1141 (citing *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993)). Allowing the Department to proceed with a new rulemaking allows it to address concerns with the 2019 Rule through the administrative process. The Department might resolve Plaintiffs' concerns through that process, potentially rendering unnecessary future litigation that could strain the Court's and parties' resources. Remand would preserve those resources.

In addition, continuing to litigate this case wastes the parties' resources in the present, resources that could be better spent on the rulemaking process. Because many of the issues raised by Plaintiffs—including issues that the Court has dismissed, as well as the procedural issues raised in Count 11—will likely be re-evaluated in the Department's new rulemaking, remand to the Department will allow the Department to focus its resources on the new rulemaking with input from Plaintiffs and other interested stakeholders. *See* Kvaal Decl. ¶ 11. In contrast, ongoing litigation could interfere with the Department's rulemaking, as the Department would have to prioritize responding to Plaintiffs' 126-page Complaint, assembling an administrative record for the 2019 Rule, and meeting other litigation deadlines. *See Am. Forest Res. Council v. Ashe*, 946 F. Supp. 2d 1, 43 (D.D.C. 2013) (because agency did "not wish to defend" the action, "forcing it to litigate the merits would needlessly waste not only the agency's resources but also time that could instead be spent correcting the rule's deficiencies").

Moreover, remand would save judicial resources and render unnecessary further litigation with respect to the 2019 Rule. Although resources have already appropriately been expended in order to determine which issues raised by Plaintiffs are legitimately within the Court's subject

matter jurisdiction, the Court has not yet addressed the merits of Plaintiffs' remaining claim. As indicated in the parties' joint case management statement, the merits would be addressed through the filing of an administrative record and cross-motions for summary judgment, but preliminary issues—such as whether Plaintiffs' 126-page complaint should be stricken under Fed. R. Civ. P. 12(f), or whether the answer should be waived, *see* CMC Statement at 7, and the dispute Plaintiffs have raised regarding whether Counts 1-3 remain at issue, *see* CMC Statement at 4-5—may yet require the Court's attention. Remand would alleviate the need to address any of these issues. Indeed, the regulatory developments described above, which have largely occurred after the prior rounds of briefing on jurisdictional issues, now suggest that Plaintiffs' concerns may be fully addressed and resolved by the Department's new rulemaking. At the very least, the rulemaking may narrow the issues if Plaintiffs were to challenge a new rule arising out of the new rulemaking. Even if remand does not resolve all of Plaintiffs' concerns, subsequent judicial review will likely turn on a new and different record that will necessarily alter the nature of this Court's review. Therefore, continuing to litigate the very same issues that the Department may resolve through a new rulemaking "would be inefficient," *FBME Bank*, 142 F. Supp. 3d at 74, and a waste of judicial resources.

### C. Remand Without Vacatur Would Not Prejudice the Parties

Remand without vacatur would not prejudice any party. The Department intends to consider and evaluate anew issues relating to GE, and this new consideration and evaluation necessarily encompasses the very issues that Plaintiffs have alleged in this case. The Department's new rulemaking may result in the promulgation of new GE regulations in a way that resolves Plaintiffs' concerns. Moreover, Plaintiffs will have the opportunity to participate in the public rulemaking process in connection with any GE-related regulations that the Department might propose. And after all, as this Court has acknowledged, rulemaking—such as the rulemaking addressing GE issues that the Department already anticipates—is the very thing that would likely be required if the litigation were to continue and Plaintiffs were to prevail. Order of Sept. 29, 2021, at 7 n.3.

Allowing the remand to occur without vacatur would also not prejudice Plaintiffs, particularly given this Court's recognition that the Department would be unable to implement the 2014 Rule's eligibility provisions as they existed, even if the 2019 Rule were vacated. Order of Sept. 3, 2020, at 19-20 (recognizing that "reinstatement of the 2014 GE Rule would not result in new debt-to-earnings rate calculations"). Indeed, vacating the 2019 Rule at this point would likely prejudice both Plaintiffs' and the Department's interests by resurrecting a regulatory regime that the Department is no longer able to implement. Kvaal Decl. ¶¶ 8, 10, 12. As discussed above, if the 2014 Rule were to go back into effect, the Department would face potential lawsuits by those who might challenge the Department's implementation of the 2014 Rule, or its inability to do so, even as the Department continued trying to promulgate a new, viable rule that could be implemented. When such claims were raised previously, in *Maryland*, 474 F. Supp. 3d 19, the resulting litigation lasted for a number of years. The Department would have to spend resources and attention on addressing such claims, to the potential detriment of other activities including ongoing rulemaking efforts. *Cf. Cal. Cmtys. Against Toxics*, 688 F.3d at 993 (recognizing vacatur may "pave the road to legal challenges" that might interfere with the agency's ongoing operations).

## **CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' motion to remand this action to the Department, without vacatur, and dismiss Count 11 without prejudice.

DATED: October 29, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General
MARCIA BERMAN
Assistant Director, Federal Programs Branch

/s/ Kathryn L. Wyer
KATHRYN L. WYER (Utah Bar No. 9846)
U.S. Department of Justice, Civil Division
1100 L Street, N.W., Room 12014
Tel. (202) 616-8475
kathryn.wyer@usdoj.gov

*Attorneys for Defendants*