BRIAN M. BOYNTON
Acting Assistant Attorney General
MARCIA BERMAN
Assistant Director, Federal Programs Branch
KATHRYN L. WYER (Utah Bar No. 9846)
U.S. Department of Justice, Civil Division
1100 L Street, N.W., Room 12014
Tel. (202) 616-8475
kathryn.wyer@usdoj.gov
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF TEACHERS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MIGUEL CARDONA, *et al.*, <br><br> Defendants. | Case No. 5:20-cv-455-EJD <br><br> **DECLARATION OF JAMES RICHARD KVAAL** |

I, James R. Kvaal, declare as follows:

1. I am the Under Secretary at the U.S. Department of Education, and I have served in this position since September 2021. I previously served as President of the Institute for College Access and Success from 2017 until 2021. Prior to that, I served as Deputy Director of the White House Domestic Policy Council from 2013 to 2016. I was also the Deputy Under Secretary of Education at the U.S. Department of Education from 2010 to 2011.

2. I submit this declaration in the above-captioned case to explain the effect that vacatur of the Department's 2019 rule rescinding the 2014 gainful employment rule (the "2019 Rule") would have on the Department as well as to explain the status of the Department's current

and anticipated future rulemaking efforts on the subject of gainful employment. This declaration is based on personal knowledge and information provided to me in my official capacity.

3. In my current position as Under Secretary, and due to my prior roles serving at the Department of Education and on the Domestic Policy Council, I am familiar with the computer systems and contracting work that were needed to implement the Department's initial rule, promulgated in 2010 and 2011, that established reporting requirements for institutions of higher education offering programs that prepare students for gainful employment in recognized occupations ("GE Programs"), and created outcome measures for those programs. This included most educational programs offered by proprietary institutions of higher education, and non-degree certificate or diploma programs offered by other institutions of higher education. After the 2010 and 2011 regulations were held invalid in 2012, the Department engaged in new negotiated rulemaking, which ultimately resulted in the 2014 gainful employment rule ("2014 GE Rule"). The 2014 GE Rule removed a loan Repayment Rate calculation that was invalidated in the 2012 court ruling, along with other changes.

4. Under the 2014 GE Rule, the Department was required to undertake a multi-step process to produce the information used in different parts of the rule. First, institutions providing GE Programs would transmit to the Department a list of students who completed those programs during a year. The Department would then obtain aggregate earnings data for those graduates from the Social Security Administration ("SSA"). The Department and the SSA entered into a Memorandum of Understanding ("MOU") that permitted the Department to obtain the aggregate earnings information for GE Programs from the SSA. The Department would then use the SSA data to calculate a debt-to earnings ratio for each GE Program by comparing a GE Program's average earnings to its average education loan debt. GE Programs with high debt-to-earnings

ratios had the opportunity to appeal the calculated ratios by submitting alternative earnings data to the Department. GE Programs that continued to have high ratios, following the resolution of any such appeals, for two years in a row or two out of three years were subject to additional requirements and sanctions that could include a loss of eligibility for federal student aid. The regulations also allowed the Department to identify information that GE Programs had to display on each institution's website in a disclosure template provided by the Department.

5. The Department staff worked with contractors to put in place substantial changes to its operational systems to support each step of the debt-to-earnings calculations described above, as well as to provide the disclosure template. Many of these changes were originally made to implement the 2010 and 2011 regulations, and these systems were further updated to incorporate the changes required by the 2014 GE Rule.

6. In 2018 the MOU between the Department and the Social Security Administration expired, and the SSA declined the Department's request to renew it. Without the aggregate earnings information that the SSA had provided pursuant to the MOU, the Department could not calculate educational debt-to-earnings ratios used to evaluate the GE Programs.

7. After it became clear that the Department was unable to continue performing the debt-to-earnings calculations required by the 2014 GE Rule, Department staff who had been assigned to implement the 2014 GE Rule were reassigned to work on other projects. Substantial system changes and upgrades to the Department data systems were also planned during this period to cover other aspects of Department operations, including significant changes to the College Scorecard so that it could provide students and families with some program earnings information derived from aggregate earnings data from the Internal Revenue Service. The

operational systems that had been used to implement the 2014 GE Rule were not included in these planned changes and upgrades.

8. After the 2019 Rule went into effect rescinding the 2014 GE Rule, the Department implemented the planned changes and upgrades to its systems. These changes did not maintain the functionality that had allowed GE Programs to electronically report the information required under the 2014 GE Rule and had allowed the Department to calculate GE Programs' debt-to-earnings rates, and to disseminate disclosure templates, and further shifted staffing and contracting resources to other priorities. In light of these changes, it is no longer possible to use the Department's systems in their current form to implement the disclosure and eligibility provisions of the 2014 GE Rule. It would be burdensome and time consuming to modify the Department's systems to make such operations possible again. Such modifications would likely take at least a year, if not longer, to be fully implemented. Moreover, even after the required changes were made, it would take a period of at least several months to go through the multiple steps that were identified in the 2014 GE Rule, involving obtaining information from GE Programs; allowing for corrections of data; calculating debt to earnings rates; and republishing disclosure templates.

9. The Department would also face uncertainty regarding whether it should go forward with such efforts because, even if it made the necessary systems changes and began the process of collecting information from GE Programs, it would ultimately be unable to implement the eligibility requirements of the 2014 GE Rule, due to the fact that it continues to have no MOU in place with the SSA that would allow it to obtain the earnings data that the 2014 GE Rule requires for debt-to-earnings calculations. If SSA remains unwilling to enter into a new MOU, the Department would need to modify the regulations to provide for another source of that

DECLARATION OF JAMES RICHARD KVAAL
Case No. 5:20-cv-455-EJD

4

data. The requirements to engage in negotiated rulemaking and observe the deadlines in the Master Calendar would make it impossible to make those regulatory changes on a faster timeline than that for promulgating a new rule.

10. For all these reasons, putting all or part of the 2014 GE Rule back in place would cause considerable disruption and diversion of resources from the Department's priorities, which include restoring the student protections in this rule, as I note below. Going through this process would be particularly disruptive now because the Department is currently moving forward with efforts to re-regulate in this area, which could result in the need for yet further changes to the Department's operational systems. In the end, it is unclear whether the Department would be able to fully implement any portion of the 2014 GE Rule before a new rule might be promulgated. The Department would prefer to focus its resources on preparing to implement a new rule rather than attempting to resurrect past systems for a rule that would likely be in place only temporarily, until a new rule would go into effect.

11. I am also familiar with the Department's plans for further rulemaking on gainful employment regulations. Following the change in Administration that occurred on January 20, 2021, the Department undertook a review to identify areas in which it wished to consider further rulemaking in accord with the new Administration's policy goals. The Department identified gainful employment as one such area. The Department identified substantial policy concerns with the 2019 Rule's rescission of the 2014 GE Rule and determined that additional consideration should be given to this issue. It therefore listed gainful employment as a potential topic for negotiated rulemaking in a May 26, 2021, announcement that solicited written comments and provided dates on which the Department would hold virtual public hearings. 86 Fed. Reg. 28299 (May 26, 2021). During public hearings in June 2021, members of the public

DECLARATION OF JAMES RICHARD KVAAL
Case No. 5:20-cv-455-EJD

5

made comments concerning whether new regulations for Gainful Employment Programs should be created. The Department announced its intent to convene a negotiated rulemaking committee that would focus on issues relating to institutional and programmatic eligibility, which encompasses issues relating to GE program eligibility, on October 4, 2021. 86 Fed. Reg. 5466, 54667 (Oct. 4, 2021). The Department plans to request nominations before the end of the year for non-federal negotiators to participate in negotiated rulemaking meetings that will include gainful employment issues. Those meetings will be held early in 2022.

12. The Department anticipates that, if the 2014 GE Rule went back into effect, the Department would have to divert personnel and resources from other Department activities, including these new planned rulemaking efforts on gainful employment, to defend against new lawsuits that would challenge the Department's inability to quickly implement the 2014 GE Rule, due to the changes in Department systems and unavailability of SSA data as described above. This could also inject uncertainty into new efforts to reregulate in this area.

Pursuant to 28 U.S.C. § 1746, I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

Executed on 10/28/2021
Washington, D.C.

DECLARATION OF JAMES RICHARD KVAAL
Case No. 5:20-cv-455-EJD

6