Glenn Rothner (SBN 67353)
ROTHNER SEGALL & GREENSTONE
510 South Marengo Avenue
Pasadena, CA 91101
grothner@rsglabor.com
Telephone: (626) 796-7555
Facsimile: (626) 577-0124

Daniel A. Zibel (*admitted pro hac vice*)
Aaron S. Ament (*admitted pro hac vice*)
Robyn K. Bitner (*admitted pro hac vice*)
NATIONAL STUDENT LEGAL DEFENSE NETWORK
1015 15th Street Northwest, Suite 600
Washington, D.C. 20005
dan@defendstudents.org
aaron@defendstudents.org
robyn@defendstudents.org
Telephone: (202) 734-7495

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ISAI BALTEZAR & JULIE CHO,<br><br>   *Plaintiffs*,<br><br>vs.<br><br>MIGUEL CARDONA, *in his official capacity as Secretary of Education*, & UNITED STATES DEPARTMENT OF EDUCATION,<br><br>   *Defendants*. | Case No. 20-cv-00455-EJD<br><br>PLAINTIFFS' STATEMENT OF OPPOSITION IN PART AND NON-OPPOSITION IN PART TO DEFENDANTS' MOTION FOR REMAND<br><br>Date: March 24, 2022<br>Time: 9:00 am<br>Place: Courtroom 4, 5th Floor<br>Judge: Hon. Edward J. Davila |

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................................ii

TABLE OF AUTHORITIES .........................................................................................................iii

INTRODUCTION ........................................................................................................................... 1

STATEMENT OF THE ISSUE....................................................................................................... 2

BACKGROUND & PROCEDURAL HISTORY ........................................................................... 2

ARGUMENT .................................................................................................................................. 3

I.     Remand with vacatur is the appropriate remedy...................................................................... 3

    A.     The Department fails to satisfy the first prong of *Allied-Signal* because the Repeal is fundamentally flawed and the Department is unlikely to reach the same result on remand... 5

    B.     The Department fails to satisfy the second prong of *Allied-Signal* because it does not show any "disruptive consequences" to the public interest. ................................................. 11

        i.     The Department does not identify any "public" harms caused by vacatur.............. 12

        ii.     The Department's professed harms are insufficient to justify remand without vacatur............................................................................................................................... 13

II.     In the alternative, the parties should engage in expedited summary judgment briefing…19

CONCLUSION............................................................................................................................. 19

PLAINTIFFS' STATEMENT OF OPPOSITION IN PART AND NON-OPPOSITION IN PART TO
DEFENDANTS' MOTION FOR REMAND, Case No. 20-cv-455-EJD

ii

# TABLE OF AUTHORITIES

**CASES**

*All. for Wild Rockies v. Higgins*, No. 2:19-CV-00332-REB, 2021 WL 1630546 (D. Idaho Apr. 27, 2021) ................................................................................................................. 10

*All. for Wild Rockies v. Marten*, No. CV 17-21-M-DLC, 2018 WL 2943251 (D. Mont. June 12, 2018) ........................................................................................................................... 4

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146 (D.C. Cir. 1993) ................... 4

*Am. Petroleum Inst. v. EPA*, 683 F.3d 382 (D.C. Cir. 2012) ......................................... 4

*APC v. Duncan*, 107 F. Supp. 3d 332 (S.D.N.Y. 2015) ...................................................... 5

*APSCU v. Duncan*, 110 F. Supp. 3d 176 (D.D.C. 2015), *aff'd per curiam*, 640 F. App'x 5 (D.C. Cir. 2016) ............................................................................................................... 6

*APSCU v. Duncan*, 870 F. Supp. 2d. 133 (D.D.C. 2012) ................................................ 5, 6, 8

*AquAlliance v. U.S. Bureau of Reclamation*, 312 F. Supp. 3d 878 (E.D. Cal. 2018) ....... 11, 12, 13

*ASSE Int'l, Inc. v. Kerry*, 182 F. Supp. 3d 1059 (C.D. Cal. 2016) ............................................. 11

*Bauer v. DeVos*, 325 F. Supp. 3d 74 (D.D.C. 2018) ........................................................ 16

*Behring Reg'l Ctr. LLC v. Wolf*, No. 20-CV-09263-JSC, 2021 WL 2554051 (N.D. Cal. June 22, 2021) ............................................................................................................................ 3

*Cal. Cmties. Against Toxics v. EPA*, 688 F.3d 989 (9th Cir. 2012) ........................................... 4, 13

*California v. Bernhardt*, 472 F. Supp. 3d 573 (N.D. Cal. 2020) ......................................... 2, 8, 14

*California v. U.S. Bureau of Land Mgmt.*, 277 F. Supp. 3d 1106 (N.D. Cal. 2017) ............. passim

*Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984) ..................................... 6

*Coal. to Protect Puget Sound Habitat v. U.S. Army Corps. of Engineers*, 466 F. Supp. 3d 1217 (W.D. Wash. 2020) ............................................................................................................. 18

*Comite de Apoyo a los Trabajadores Agricolas v. Solis*, 933 F. Supp. 2d 700 (E.D. Pa. 2013) .... 3

*Conn. Light & Power Co. v. Nuclear Regul. Comm'n*, 673 F.2d 525 (D.C. Cir. 1982) ................. 8

*Consumer Energy Council of Am. v. Fed. Energy Regul. Comm'n*, 673 F.2d 425 (D.C. Cir. 1982) ....................................................................................................................................... 8

*Ctr. for Env't Health v. Vilsack*, No. 15-CV-01690-JSC, 2016 WL 3383954 (N.D. Cal. June 20, 2016) ........................................................................................................................... 2, 5

*Defs. of Wildlife v. Zinke*, 856 F.3d 1248 (9th Cir. 2017)..................................... 8

*Ethyl Corp. v. EPA*, 541 F.2d 1 (D.C. Cir. 1976) ..................................... 10

*Fed. Election Comm'n v. Democratic Senatorial Campaign Comm'n*, 454 U.S. 27 (1981).......... 7

*Flores v. Barr*, 407 F. Supp. 3d 909 (C.D. Cal. 2019)..................................... 9

*Friends of the Cap. Crescent Trail v. Fed. Transit Admin.*, 218 F. Supp. 3d 53 (D.D.C. 2016).. 17

*In re Clean Water Act Rulemaking*, -- F. Supp. 3d --, 2021 WL 4924844 (N.D. Cal., Oct. 21, 2021) ............................................................................... 2, 4, 11

*Inst. for Fisheries Res. v. FDA*, 499 F. Supp. 3d 657 (N.D. Cal. 2020), *appeal dismissed sub nom. Inst. for Fisheries Res. v. Becerra*, No. 21-15640, 2021 WL 4807198 (9th Cir. Apr. 22, 2021) ............................................................................... 13

*Kern Cty. Farm Bureau v. Allen*, 450 F.3d 1072 (9th Cir. 2006) ................................. 10

*League of Wilderness Defs./Blue Mountains Biodiversity Project v. U.S. Forest Serv.*, No. 3:10-CV-01397-SI, 2012 WL 13042847 (D. Or. Dec. 10, 2012) ....................................... 4

*Local Joint Executive Board of Las Vegas v. NLRB,* 840 F. App'x 134 (9th Cir. 2020) ............. 13

*Los Angeles v. Dickson,* No. 19-71581, 2021 WL 2850586 (9th Cir. July 8, 2021) ................... 13

*Maryland v. U. S. Dep't of Educ.*, 474 F. Supp. 3d 13 (D.D.C. 2020), *vacated and remanded on other grounds,* No. 20-5268, 2020 WL 7868112 (D.C. Cir. Dec. 22, 2020)........................... 19

*MD/DC/DE Broads. Ass'n v. Fed. Comm'ns Comm'n*, 236 F.3d 13 (D.C. Cir. 2001) ................. 9

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983)... 8

*N. Coast Rivers All. v. Dep't of the Interior*, No. 16-cv-00307, 2016 WL 8673038 (E.D. Cal. Dec. 16, 2016)................................................................................ 4, 6

*Nat. Res. Def. Council v. EPA*, 489 F.3d 1364 (D.C. Cir. 2007).................................... 7

*Nat. Res. Def. Council v. Kempthorne*, No. 1:05-CV-01207 LJO, 2015 WL 3750305 (E.D. Cal. June 15, 2015)............................................................................... 12

*Nat. Res. Def. Council v. Wheeler*, 955 F.3d 68 (D.C. Cir. 2020)................................ 16

*Nat'l Family Farm Coal. v. EPA*, 960 F.3d 1120 (9th Cir. 2020) ............................ 3, 5

*Navajo Nation v. Regan*, No. 20-cv-602-MV, 2021 WL 4430466 (D. New Mex. Sept. 27, 2021) .............................................................................................. 16

*Neighbors Against Bison Slaughter v. Nat'l Park Serv.,* No. CV 19-128-BLG-SPW, 2021 WL 717094 (D. Mont. Feb. 5, 2021). ................................................................................. 13

*North Carolina v. EPA*, 531 F.3d 896 (D.C. Cir. 2008) ............................................. 1, 11

*Pascua Yaqui Tribe v. EPA*, -- F. Supp. 3d --, 2021 WL 3855977 (D. Ariz. Aug. 30, 2021) ................................................................................................................................. .passim

*Penobscot Indian Nation v. U.S. Dep't of Hous. & Urban Dev.*, 539 F. Supp. 40 (D.D.C. 2008) ................................................................................................................................. .10

*Pollinator Stewardship Council v. EPA*, 806 F.3d 520 (9th Cir. 2015) ..................... 1, 5

*Puget Soundkeeper All. v. Wheeler*, No. C15-1342-JCC, 2018 WL 6169196 (W.D. Wash. Nov. 26, 2018) ................................................................................................................. 10

*Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476 (9th Cir. 2018) ......... 6

*Sea-Land Serv., Inc. v. DOT*, 137 F.3d 640 (D.C. Cir. 1998) ...................................... 6

*SEC v. Chenery Corp.*, 318 U.S. 80 (1943) ................................................................ 6

*Sugar Cane Growers Coop. of Fla. v. Veneman,* 289 F.3d 89 (D.C. Cir. 2002) ......................... 15

**STATUTES**

20 U.S.C. § 1001 ........................................................................................................... 7

20 U.S.C. § 1002 ........................................................................................................... 7

20 U.S.C. § 1089 ......................................................................................................... 16

5 U.S.C. § 553 ............................................................................................................... 8

5 U.S.C. § 702 ............................................................................................................... 2

5 U.S.C. § 706 ........................................................................................................... 1, 4

**REGULATIONS**

34 C.F.R. § 668.403 ................................................................................................... 16

34 C.F.R. § 668.410 ................................................................................................... 16

34 C.F.R. § 668.411 ................................................................................................... 15

34 C.F.R. § 668.412 ................................................................................................... 15

34 C.F.R. § 668 413 ................................................................................................... 15

34 C.F.R. § 668.414 ................................................................................................ 16

Admin. Conf. of the U.S., Recommendation 2018-2, *Severability in Agency Rulemaking*, 83 Fed. Reg. 30,685 (June 29, 2018) ............................................................... 9

Negotiated Rulemaking Comm.; Negotiator Nominations & Schedule of Comm. Meetings, 86 Fed. Reg. 43,609 (Aug. 20, 2021) ........................................................ 17

Negotiated Rulemaking Comm.; Public Hearings, 86 Fed. Reg. 28,299 (May 26, 2021) .......... 17

Negotiated Rulemaking Comm.; Public Hearings, 86 Fed. Reg. 54,666 (Oct. 4, 2021) .............. 17

Program Integrity & Improvement, 83 Fed. Reg. 31,296 (July 3, 2018)..................................... 17

Program Integrity: Gainful Employment, 79 Fed. Reg. 64,890 (Oct. 31, 2014), *corrected by* 79 Fed. Reg. 71,957 (Dec. 4, 2014) ............................................................ 2, 15, 18

Program Integrity: Gainful Employment, 83 Fed. Reg. 40,167 (Aug. 14, 2018) ................... 9, 10

Program Integrity: Gainful Employment, 84 Fed. Reg. 31,392 (July 1, 2019) .................... passim

**OTHER AUTHORITIES**

Cory Turner, *Teachers Union Lawsuit Claims DeVos 'Capriciously' Repealed Borrower Protections*, Nat'l Public Radio (Jan. 22, 2020), *available at:* https://www.npr.org/2020/01/22/798128256/teachers-union-lawsuit-claims-devos-capriciously-repealed-borrower-protections ..................................................................................... 7

U.S. Dep't of Educ., Gainful Employment Disclosure Template, https://www2.ed.gov/about/offices/list/ope/ge-template.html (last visited November 11, 2021) ......................................................................................................... 15

**INTRODUCTION**

Defendants United States Department of Education and Secretary Miguel Cardona (collectively, "Department") have asked this Court to remand the Repeal of the 2014 Gainful Employment Rule without vacatur. *See* Defs.' Mot. for Voluntary Remand Without Vacatur [Dkt. 48] ("Remand Mot."). Plaintiffs Isai Baltezar and Julie Cho ("Plaintiffs")[1] do not oppose the requested voluntary remand, but contend that, if the Court grants the Department's motion, it must also vacate the Repeal. Absent vacatur, a remand will allow an unlawful rule (the Repeal) to remain in place until *at least* July 2023, likely longer, and perhaps indefinitely. Moreover, absent vacatur, students—including Mr. Baltezar and Ms. Cho—will not benefit from the Gainful Employment Rule's many protections. At the same time, a voluntary remand without vacatur—prior to any decision on the merits—will allow the Department to escape judicial review and the statutory requirement that illegal agency actions be "set aside." 5 U.S.C. § 706(2).

The Department's motion fails the Ninth Circuit's test for remand without vacatur. First, the Department's errors are "serious" and it intends to reregulate, conceding that it will not be adopting the Repeal again. *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015) (citing *North Carolina v. EPA*, 531 F.3d 896, 900 (D.C. Cir. 2008) (concluding that a rule "'must' be vacated because 'fundamental flaws' prevented the [agency] from promulgating the same rule on remand")). Second, the Department does not even attempt to explain, as it must, how *the public*—students, other taxpayers who fund the federal student aid programs, or institutions—will be irreparably harmed by vacatur. Instead, the Department asserts only that a remand with vacatur could bring operational challenges to the Department and implementation delays. That comes nowhere close to meeting the standard for ordering remand without vacatur. *California v. U.S. Bureau of Land Mgmt.*, 277 F. Supp. 3d 1106, 1125–26 (N.D. Cal. 2017) (requiring the agency to show "irreparable and severe disruptive consequences" to the public that

---

[1]     On November 11, 2021, Plaintiffs American Federation of Teachers and California Federation of Teachers filed a Notice of Voluntary Dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). *See* Dkt. 49.

would result from vacatur and highlighting the "extinction of an already endangered species" and "rolling blackouts affecting thousands, if not millions of people, more air pollution, and disastrous economic effects" as the sorts of circumstances where the Ninth Circuit has declined vacatur).

Because the Department's justifications do not demonstrate the need for such an "unusual" remedy, the Court should remand the Repeal only if it does so with vacatur. *See, e.g.*, *In re Clean Water Act Rulemaking*, -- F. Supp. 3d --, 2021 WL 4924844, at **9–10 (N.D. Cal., Oct. 21, 2021); *Pascua Yaqui Tribe v. EPA*, -- F. Supp. 3d --, 2021 WL 3855977, at *5 (D. Ariz. Aug. 30, 2021); *California v. Bernhardt*, 472 F. Supp. 3d 573, 630–31 (N.D. Cal. 2020); *Ctr. for Env't Health v. Vilsack*, No. 15-CV-01690-JSC, 2016 WL 3383954, at *13 (N.D. Cal. June 20, 2016). In the alternative, if the Court denies the Department's motion, Plaintiffs request an expedited summary judgment briefing schedule to resolve promptly any questions of law and fashion an appropriate remedy.

## STATEMENT OF THE ISSUE

Whether the Court should remand with vacatur the challenged agency action or order expedited summary judgment briefing.

## BACKGROUND & PROCEDURAL HISTORY

In 2014, the Department published the Gainful Employment Rule to protect prospective and enrolled students from "unaffordable levels of [student] loan debt in relation to their earnings." Program Integrity: Gainful Employment, 79 Fed. Reg. 64,890, 64,890 (Oct. 31, 2014), *corrected by* 79 Fed. Reg. 71,957 (Dec. 4, 2014) (collectively, the "GE Rule"). The Department based the GE Rule on persuasive evidence that certain higher education programs failed to provide proper training, imposed high costs out of proportion to graduates' low wages, and demonstrated low completion rates, all of which led students to default on their federal loans. 79 Fed. Reg. at 64,890.

In 2019, the Department reversed course and repealed the rule. As outlined in the Complaint, this reversal violated bedrock principles of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 *et seq*., in myriad ways. Accordingly, in January 2020, Plaintiffs filed

this action seeking, *inter alia*, a declaration that the Repeal was unlawful and an order vacating the same. Compl. [Dkt. 1] at 121. In May 2020, Defendants moved to dismiss. *See* Defs.' Mot. to Dismiss [Dkt. 26]. On September 3, 2020, this Court entered an order dismissing Plaintiffs' "Disclosure Claims," defined by the Court as ¶¶ 374–89 of the Complaint (corresponding to Count 4) and the "Eligibility Claims," defined by the Court as ¶¶ 390–441 (corresponding to Counts 5–10). *See* Order on Defs.' Mot. to Dismiss [Dkt. 33] at 13 (defining "Eligibility Claims" and "Disclosure Claims"); *id.* at 17–20 (dismissing those two sets of claims). Plaintiffs' other claims remain pending.

The Department subsequently filed a Motion for Reconsideration, Dkt. 38, in which it again urged the Court to dismiss Count 11. On September 29, 2021, the Court denied that motion. Order on Defs.' Mot. for Reconsideration [Dkt. 44]. Neither in that motion, nor at any other time, has the Department asked the Court to reconsider its decision as to Counts 1–3. Instead, the Department has twice taken the position—in contradiction of the plain language of the September 2020 Order—that the Court's Order dismissing Count 4 and Counts 5–10 "necessarily encompass[es]" Counts 1–3. Dkt. 48 at 4–5 n.2*; see also* Joint Case Management Statement [Dkt. 35] at 4.

On October 29, 2021, the Department filed the instant motion in which it, once again, seeks to dismiss the case.

## ARGUMENT

### I.   Remand <u>with</u> vacatur is the appropriate remedy.

Remand without vacatur is an unusual and disfavored remedy, ordered "only in 'limited circumstances.'" *Nat'l Family Farm Coal. v. EPA*, 960 F.3d 1120, 1144 (9th Cir. 2020); *see also, e.g.*, *Behring Reg'l Ctr. LLC v. Wolf*, No. 20-CV-09263-JSC, 2021 WL 2554051, at *9 (N.D. Cal. June 22, 2021) ("In the Ninth Circuit, remand without vacatur is the exception rather than the rule."). The reasons for this are clear. When an agency facing a legal challenge seeks a remand without vacatur of its own actions prior to any determination of the merits, the agency's proffered approach has the "practical effect" of allowing "an invalid rule [to] remain[] in place" while the agency changes its policies. *Comite de Apoyo a los Trabajadores Agricolas v. Solis*,

933 F. Supp. 2d 700, 714 (E.D. Pa. 2013). It also allows "a savvy agency [to] perpetually dodge [judicial] review." *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 387–88 (D.C. Cir. 2012).[2] To prevent this end run around the APA, remands, including voluntary remands, are typically accompanied by vacatur of the challenged rule. Courts only leave agency actions in place "when equity demands." *Cal. Cmties. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (internal quotation marks omitted).

When weighing the equities of leaving a challenged rule in place while an agency reconsiders, the Ninth Circuit follows the two-part test described in *Allied-Signal, Inc. v. United States Nuclear Regulatory Commission*, 988 F.2d 146 (D.C. Cir. 1993). The *Allied- Signal* test requires the court to weigh both: (1) the seriousness of the agency's errors, including the likelihood that the same rule would be adopted following remand; and (2) the potential disruptive consequences of vacatur. *Cal. Cmties. Against Toxics*, 688 F.3d at 992 (citing *Allied-Signal*, 988 F.2d at 150–51). Courts may only "decline to vacate agency decisions when vacatur would cause serious and irremediable harms that significantly outweigh the magnitude of the agency's error." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. U.S. Forest Serv.*, No. 3:10-CV-01397-SI, 2012 WL 13042847, at *2 (D. Or. Dec. 10, 2012).

---

[2]    Because the APA requires illegal agency actions to be "set aside" rather than left in place, 5 U.S.C. § 706(2), courts are particularly skeptical of remand requests prior to decisions on the merits. Nevertheless, as Judge Allsup recently concluded, a court facing an agency's request for remand without vacatur has the equitable authority to vacate the challenged action. *In re Clean Water Act Rulemaking*, -- F. Supp. 3d --, 2021 WL 4924844, at *4–5 ("[W]hen an agency requests voluntary remand, a district court may vacate an agency's action without first making a determination on the merits.") (citing *Pascua Yaqui Tribe v. EPA*, -- F. Supp. 3d --, 2021 WL 3855977, at *4); *All. for Wild Rockies v. Marten*, No. CV 17-21-M-DLC, 2018 WL 2943251, at *2–3 (D. Mont. June 12, 2018); *N. Coast Rivers All. v. Dep't of the Interior*, No. 16-cv-00307, 2016 WL 8673038, at *6 (E.D. Cal. Dec. 16, 2016).

Because vacatur is both ordinary and presumed, the Department bears the burden of demonstrating vacatur is inappropriate. *Ctr. for Env't Health*, No. 15-CV-01690-JSC, 2016 WL 3383954, at *13 ("[G]iven that vacatur is the presumptive remedy for a . . . violation such as this, it is Defendants' burden to show that vacatur is unwarranted."). The Department has not met its burden under either *Allied-Signal* prong.

A.   **The Department fails to satisfy the first prong of *Allied-Signal* because the Repeal is fundamentally flawed and the Department is unlikely to reach the same result on remand.**

Under the first prong of *Allied-Signal*, courts not only look to the seriousness of the agency's errors, *U.S. Bureau of Land Mgmt.*, 277 F. Supp. 3d at 1125 ("Courts generally only remand without vacatur when the errors are minor procedural mistakes[.]"), but also to "whether such fundamental flaws in the agency's decision make it unlikely that the same rule would be adopted on remand." *Pollinator Stewardship*, 806 F.3d at 532; *see also Nat'l Family Farm Coal.*, 960 F.3d at 1145. Perhaps because the Repeal committed at least four serious errors,[3] the Department now asserts that "further change is the reason that the Department is requesting remand." Remand Mot. at 12. But those flaws, combined with the Department's desire to reach a different result, command vacatur.

To begin, the Repeal is based on an erroneous interpretation of the Higher Education Act of 1965 ("HEA"). Compl., Count 1 ¶¶ 351–57. The Department asserted that by repealing the GE Rule defining the HEA's term "prepare students for gainful employment in a recognized occupation," the Department was, "in fact, . . . enforcing the law as written and as intended." Program Integrity: Gainful Employment, 84 Fed. Reg. 31,392, 31,401 (July 1, 2019). Not so. Congress left a gap in the HEA and delegated its authority to the Department to fill it. *See APSCU v. Duncan*, 870 F. Supp. 2d 133, 146 (D.D.C. 2012) ("APSCU I") (holding that, in promulgating the gainful employment language, Congress "delegated interpretive authority to the Department"); *APC v. Duncan*, 107 F. Supp. 3d 332, 359–60 (S.D.N.Y. 2015) (finding *APSCU I* to be "thorough," "faithful to Supreme Court precedent," and "persuasive" before

---

[3]     Plaintiffs do not concede that other errors identified in the Complaint are not "serious."

agreeing that the relevant statutory command—"prepare students for gainful employment in a recognized occupation"—was ambiguous); *APSCU v. Duncan*, 110 F. Supp. 3d 176, 186 (D.D.C. 2015) (finding the same statutory language ambiguous, "leav[ing] a policy gap" for the Department to fill), *aff'd per curiam*, 640 F. App'x 5, 7 (D.C. Cir. 2016). Indeed, the Department was only able to promulgate the GE Rule *because* Congress did not ascribe a meaning to this statutory phrase, leaving it ambiguous. *APSCU I*, 870 F. Supp. 2d. at 146; *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984) (holding that where statutory language is unambiguous, the agency must only give effect to the clear intent of Congress). That the Department based the Repeal on this errant and judicially foreclosed interpretation of the HEA is alone sufficient to compel vacatur. *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 505 (9th Cir. 2018) ("It is black letter law that where an agency purports to act solely on the basis that a certain result is legally required, and that legal premise turns out to be incorrect, the action must be set aside, regardless of whether the action *could* have been justified as an exercise of discretion.") (emphasis in original); *see also SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943) ("[I]f [an agency] action is based upon a determination of law as to which the reviewing authority of the courts does come into play, an order may not stand if the agency has misconceived the law."); *Sea-Land Serv., Inc. v. DOT*, 137 F.3d 640, 646 (D.C. Cir. 1998) ("An agency action, however permissible as an exercise of discretion, cannot be sustained where it is based not on the agency's own judgment[,] but on an erroneous view of the law.") (internal quotation marks omitted).[4]

---

[4]     This error is so fundamental that, on remand, the Department cannot simultaneously: (i) defend the Repeal's finding that the "gainful employment" language is unambiguous and an effectuation of Congressional intent; and (ii) adopt, through regulation, a new interpretation of that same language. To take those contradictory positions would itself be arbitrary and capricious. *See N. Coast Rivers Alliance*, No. 16-cv-00307, 2016 WL 8673038, at *8 ("One way to measure the seriousness of an agency's errors is to attempt to evaluate the likelihood that the

The Repeal also ignored clear statutory distinctions in the HEA establishing eligibility criteria for institutions and programs to participate in the federal student aid programs. Compl., Count 2 ¶¶ 362–64. To participate, non-degree programs offered at public and nonprofit institutions and nearly all programs at proprietary and postsecondary vocational institutions must "prepare students for gainful employment in a recognized occupation." 20 U.S.C. §§ 1001(a)–(b), 1002(b)(1)(A)(i), (c)(1)(A). The same is not true for other types of institutions and programs. The Repeal not only eliminated all regulatory criteria that applied to "gainful employment" programs,[5] but the Department conceded that doing so would allow such programs to "avoid[] ineligibility" to participate in the Title IV system. 84 Fed. Reg. at 31,446. That is not what Congress intended. When an agency action, like the Repeal, is inconsistent with a statutory mandate or frustrates the policy that Congress sought to implement, *Fed. Election Comm'n v. Democratic Senatorial Campaign Comm'n*, 454 U.S. 27, 32 (1981), the "error[] could not be more serious insofar as [the agency] acted unlawfully, which is more than sufficient reason to vacate the rule[]." *Nat. Res. Def. Council v. EPA*, 489 F.3d 1364, 1374 (D.C. Cir. 2007).

In addition, the Department based the Repeal on factors Congress did not intend for it to consider. Compl., Count 3 ¶¶ 366–73. A primary rationale for the Department's Repeal of the GE Rule was that it disproportionately impacted for-profit and proprietary institutions. *See, e.g.*, 84 Fed. Reg. at 31,392 (asserting that the GE Rule "wrongfully targets some academic programs

---

agency will be able to justify future decisions [that would be the same as the challenged agency action]").

[5] As Undersecretary Kvaal stated in January 2020, "[the Department] just undefined the term . . . Gainful employment had meaning, and [Secretary DeVos] took it out. And I just — I've never seen that before. I've never seen an agency take a term that was in the regulations and just undefine it without replacing it with some new meaning." Cory Turner, *Teachers Union Lawsuit Claims DeVos 'Capriciously' Repealed Borrower Protections*, Nat'l Public Radio (Jan. 22, 2020), *available at:* https://www.npr.org/2020/01/22/798128256/teachers-union-lawsuit-claims-devos-capriciously-repealed-borrower-protections.

and institutions while ignoring other programs"); 84 Fed. Reg. at 31,397 (noting that the Department "agree[d] with commenters who expressed concern that the GE regulations established policies that unfairly target career and technical education programs"). In basing the Repeal on this alleged disproportionate impact, the Department ignored the fact that Congress *intended* to distinguish between types of programs and "delegated interpretative authority to the Department" to effectuate this distinction. *APSCU I*, 870 F. Supp. 2d at 146; *id.* at 148 ("Concerned about inadequate programs and unscrupulous institutions, the Department [in the 2011 Rule] has gone looking for rats in ratholes—*as the statute empowers it to do*.") (emphasis added). By attempting to treat programs *similarly* that Congress sought to treat *differently*, the Repeal committed serious error. *Defs. of Wildlife v. Zinke*, 856 F.3d 1248, 1257 (9th Cir. 2017) (noting that an agency acts arbitrarily and capriciously if it "relied on factors Congress did not intend for it to consider"); *see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Finally, the Department issued the Repeal in a manner that "systematically ignored the basics of rulemaking," tainting the entire process. *Bernhardt*, 472 F. Supp. 3d at 631. Under the APA, an agency must publish for comment the technical studies and data upon which it relies. *See* 5 U.S.C. § 553(b)(3) (explaining that the notice of a proposed rule must include "either the terms or substance of the proposed rule or a description of the subjects and issues involved"). The entire purpose of the APA's notice and comment period is "to allow for useful criticism" of a proposed rule. *Conn. Light & Power Co. v. Nuclear Regul. Comm'n*, 673 F.2d 525, 530 (D.C. Cir. 1982). Although this requirement is universally true, providing a meaningful comment period is particularly important during a repeal because it "ensures that an agency will not undo all that it accomplished through its rulemaking without giving all parties an opportunity to comment on the wisdom of repeal." *Bernhardt*, 472 F. Supp. 3d at 591 (quoting *Consumer Energy Council of Am. v. Fed. Energy Regul. Comm'n*, 673 F.2d 425, 446 (D.C. Cir. 1982)).[6]

---

[6]     Defendants assert that a vacatur spurred by Count 11 would only impact the Eligibility Framework. *See* Remand Mot. at 10–11. Not so. The failure to provide a meaningful opportunity

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Here, the Department prevented Plaintiffs and the public from providing such commentary. *See* Compl., Count 11 ¶ 445(a)–(e) (detailing myriad examples of how the Department deprived the public of an adequate opportunity to comment by hiding the sources upon which it purported to rely). For example, the 2018 NPRM asserted that "[r]esearch published subsequent to the promulgation of the GE regulations adds to the Department's concern about the validity of using D/E rates . . . to determine whether or not a program should be allowed to continue to participate in [T]itle IV programs." Program Integrity: Gainful Employment, 83 Fed. Reg. 40,167, 40,171 (Aug. 14, 2018); Compl. ¶ 216.[7] The NPRM also

to comment impacted the entire Repeal, including with respect to the warning requirements and how information could and should be used in the now-repealed disclosure requirements.

Even if the violations outlined in Count 11 affected the Eligibility Framework only, limiting vacatur to that framework is inconsistent with how courts address issues of severability, where the "default remedy" is to "vacate the entire rule, including those portions that the court did not hold unlawful." Admin. Conf. of the U.S., Recommendation 2018-2, *Severability in Agency Rulemaking*, 83 Fed. Reg. 30,685, 30,685 (June 29, 2018); *see also, e.g.*, *Flores v. Barr*, 407 F. Supp. 3d 909, 930 (C.D. Cal. 2019) ("A court may not sever part of a final rule if doing so would 'undercut the whole structure of the rule'—*e.g.*, by 'severely distort[ing] the . . . program' at issue and 'produc[ing] a rule strikingly different from any the [agency] has ever considered or promulgated.") (quoting *MD/DC/DE Broads. Ass'n v. Fed. Commc'ns Comm'n*, 236 F.3d 13, 22–23 (D.C. Cir. 2001)). By choosing to "remove and reserve" all of 34 C.F.R Part 668, Subpart Q, the Department repealed the GE Rule without distinguishing its component parts. Although the Court held in its September 2020 Order that Plaintiffs must establish standing for each claim asserted, this does not alter the fact that—for each of the claims asserted—Plaintiffs seek vacatur of the entire Repeal. *See* Compl. at 121.

[7]     Reflecting the seriousness of the Department's errors, when challenged in a petition under the Information Quality Act to provide a source for this "research," rather than identifying the sources, the Department only described them as "well-respected" and "peer-reviewed." *See*

asserted that "[o]ther research findings suggest that D/E rates-based eligibility creates

unnecessary barriers for institutions or programs that serve larger proportions of women and

minority students." 83 Fed. Reg. at 40,171. It failed to identify such findings or provide them for

public comment. Such errors are not, as the Department claims, "unknown."[8] Remand Mot. at 10

(internal quotation marks omitted). They are "serious." *Kern Cnty. Farm Bureau v. Allen*, 450

F.3d 1072, 1076 (9th Cir. 2006); *see also Ethyl Corp. v. EPA*, 541 F.2d 1, 87 n.82 (D.C. Cir.

1976) ("An agency may not keep secret [the] evidence on which it intends to rely to support its

decision."); *Puget Soundkeeper All. v. Wheeler*, No. C15-1342-JCC, 2018 WL 6169196, at *7

(W.D. Wash. Nov. 26, 2018) (noting that any disruptive consequences created by vacatur

"cannot overcome the *serious* procedural error committed by the Agencies in promulgating the

Applicability Date Rule without providing the public with a meaningful opportunity to comment,

---

84 Fed. Reg. at 31,427; Compl. ¶ 216. Notably, these issues permeated not only the NPRM, but

also the final Repeal. For example, the Repeal cited data the Department claimed came from

"analysis provided by Federal Student Aid," with a footnote simply stating: "Federal Student

Aid, 2018." 84 Fed. Reg. at 31,398 & n.27. That "analysis" was neither well-described in the

Repeal, nor made available for public commentary following the issuance of the NPRM.

[8]     *Alliance for Wild Rockies v. Higgins*, cited by the Department, is inapposite. There, the

core allegation was that the agency failed to explain why a certain project was within the

"wildland-urban interface," which would have rendered it excluded from the National

Environmental Protection Act. No. 2:19-CV-00332-REB, 2021 WL 1630546, at *16 (D. Idaho

Apr. 27, 2021). The court viewed the failure to explain to be an "uncertainty . . . capable of being

resolved" on remand. *Id.* Here, in contrast, the core of Count 11 is that the Department failed to

provide the technical basis for the proposed Repeal to allow the public an adequate opportunity

to comment and potentially influence the final rule. Compl. ¶¶ 444–45. If such an error can

simply be explained away, it would circumvent the entire purpose of the comment period.

*Bureau of Land Mgmt.*, 277 F. Supp. 3d at 1125 (noting that agency actions that "circumvent the

APA's notice-and-comment requirements [are] serious" before vacating the final rule).

as required by the APA") (emphasis added); *Penobscot Indian Nation v. U.S. Dep't of Hous. & Urban Dev.*, 539 F. Supp. 2d 40, 49 (D.D.C. 2008) (finding an agency violated the APA's procedural requirements by promulgating a rule relying upon an undisclosed "internal analysis of its loan portfolio").[9]

One only needs to look to the Department's rationale for remand to further demonstrate the seriousness of the Repeal's errors. The Department cannot—and indeed does not seek to— reissue the Repeal on remand. Remand Mot. at 12 (noting that "further change is the reason that [it] is requesting remand"). Where an agency "could not or will not adopt the same rule on remand" due to its fundamental flaws, the first prong from *Allied-Signal* favors vacatur. *In re Clean Water Act Rulemaking*, -- F. Supp. 3d --, 2021 WL 4924844, at *8; *see also North Carolina*, 531 F.3d at 929 (concluding that the EPA's rule "must" be vacated because "fundamental flaws" prevented the EPA from promulgating the same rule on remand); *ASSE Int'l, Inc. v. Kerry*, 182 F. Supp. 3d 1059, 1065 (C.D. Cal. 2016) (finding a State Department request to remand without vacatur to be "undermined by its statements that it intends to vacate" the action upon remand).

### B. The Department fails to satisfy the second prong of *Allied-Signal* because it does not show any "disruptive consequences" to the public interest.

The Department also fails to meet the "limited circumstances" where the "disruptive consequences" of vacatur are sufficient to grant the "rare" remedy of remand without vacatur.

---

[9]     In denying the Department's Motion to Dismiss Count 11, the Court recognized the opportunity for meaningful commentary as an "[i]ntegral" part of the APA's procedural requirements. Dkt. 33 at 21. The Court also acknowledged that the Department had ample opportunity to identify the unnamed sources and undisclosed analyses, but it failed to "identify *any* specific references in the proposed or final rule that support [its] contention that [it] disclosed the relevant research." *Id.* at 22. Even if the Department were able to identify those references today, nothing can change the fact that the public was never afforded the opportunity to comment on those studies or analyses before the Department finalized and issued the Repeal.

1  *AquAlliance v. U.S. Bureau of Reclamation*, 312 F. Supp. 3d 878, 881–82 (E.D. Cal. 2018). First,

2  the disruptive consequences must be to the "public interest," *id.*, or demonstrate "significant

3  public harm[]," *Nat. Res. Def. Council v. Kempthorne*, No. 1:05-CV-01207 LJO, 2015 WL

4  3750305, at *10 (E.D. Cal. June 15, 2015) (internal quotation marks omitted). Second, the

5  disruptive consequences must be "severe" and "irreparable." *Bureau of Land Mgmt.*, 277 F.

6  Supp. 3d at 1125–26. The Department has shown neither.

7
8              **i.**      **The Department does not identify any "public" harms caused by vacatur.**

9          The Department ignores the "public" harm requirement altogether, focusing instead on a

10  series of potential disruptions to its own internal operations. *See* Decl. of James Richard Kvaal

11  [Dkt. 48-1] ¶ 2 ("Kvaal Decl.") (submitting a declaration "to explain the effect that vacatur . . .

12  would have on the Department"); Remand Mot. at 11 (noting that vacatur "would cause

13  significant disruption to the Department and its operation"). Where an alleged harm is not to the

14  public, but to the agency only, neither *Allied-Signal* nor the APA allow an illegal agency action

15  to remain in place. *Cf. AquAlliance*, 312 F. Supp. 3d at 882 ("Even if, *arguendo*, the magnitude

16  of the agency's error is slight, the scale still cannot swing away from vacatur if there will be no

17  irremediable harm whatsoever caused by vacat[ur].").

18          To be certain, each of the cases the Department cites in which a court declined to vacate a

19  challenged action reinforces that the harm must not only be "significant," but also must affect

20  regulated entities or other third parties. For example, in *California Communities Against Toxics*,

21  the disruption was based on an entire region of the country "not hav[ing] enough power next

22  summer, resulting in blackouts." 688 F.3d at 994. In *Los Angeles v. Dickson*, the FAA argued

23  that "the consequences of vacating the amended Arrival Routes would be severely disruptive in

24  terms of cost, safety, and potential environmental consequences." No. 19-71581, 2021 WL

25  2850586, at *3 (9th Cir. July 8, 2021). In *Local Joint Executive Board of Las Vegas v. NLRB*, the

26  disruption was to "the stability of collective bargaining relationships." 840 F. App'x 134, 137–38

27  (9th Cir. 2020). Finally, in *Neighbors Against Bison Slaughter v. National Park Service*, the

28  government asserted that vacatur would "actually produce greater harm to bison" and lead to

"an increase number of bison migrating out of Yellowstone Park and negatively impacting local livestock and landowners." No. CV 19-128-BLG-SPW, 2021 WL 717094, at *3 (D. Mont. Feb. 5, 2021).

### ii.   The Department's professed harms are insufficient to justify remand without vacatur.

Even if harms to an agency can theoretically satisfy the second *Allied-Signal* prong, the purely internal administrative and operational harms the Department identified do not come close. *See Bureau of Land Mgmt.*, 277 F. Supp. 3d at 1126 (highlighting the "extinction of an already endangered species" and "rolling blackouts affecting thousands, if not millions of people, more air pollution, and disastrous economic effects" as the sorts of circumstances where the Ninth Circuit has declined vacatur); *AquAlliance*, 312 F. Supp. 3d at 882 (noting that "serious irreparable environmental" harms can justify remand without vacatur); *Inst. for Fisheries Res. v. FDA*, 499 F. Supp. 3d 657, 669–70 (N.D. Cal. 2020), *appeal dismissed sub nom. Inst. for Fisheries Res. v. Becerra*, No. 21-15640, 2021 WL 4807198 (9th Cir. Apr. 22, 2021) (noting the presumption favoring vacatur, but finding the "rare" case to be satisfied where vacatur would lead to the "current stock of salmon [being] destroyed[] [and] a significant loss of property and animal life"); *see also, e.g.*, *Pascua Yaqui Tribe*, -- F. Supp. 3d --, 2021 WL 3855977, at *4 (discussing the limited, disruptive circumstances where remand without vacatur has been found appropriate).

To begin, the Department purports to be unable to reinstate the GE Rule because of the "unavailability of [Social Security Administration ("SSA")] data" and its own "scarce resources." Remand Mot. at 11. This is a red herring. The Department cannot avoid its obligations under the APA simply because it may need to either reinstate an interagency Memorandum of Understanding ("MOU"), amend a regulation to allow for a different source of data, or reallocate staffing. As the court noted in *Bernhardt*, "[t]he fact that vacatur may not lead to 'immediate compliance' with the [prior rule] does not warrant a remand without vacatur." 472 F. Supp. 3d at 631. Moreover, this and other administrative challenges are *entirely* of the Department's own making. *Bureau of Land Mgmt.*, 277 F. Supp. 3d at 1126 (declining to

PLAINTIFFS' STATEMENT OF OPPOSITION IN PART AND NON-OPPOSITION IN PART TO DEFENDANTS' MOTION FOR REMAND, Case No. 20-cv-455-EJD

13

recognize a problem of a party's "own making" in the face of arguments regarding supported
disruption to be caused by vacatur). Because the Department has long been aware of this lawsuit,
and the possible remedy of vacatur, any administrative hurdles vacatur might cause are
insufficient. *Id.* (declining to vacate because, in part, the affected parties were "well aware" that
the agency action "was potentially vulnerable to invalidation").[10] This is simply not a case where
"[t]he egg has been scrambled and there is no apparent way to restore the status quo ante."
*Bernhardt*, 472 F. Supp. 3d at 631 (quoting *Sugar Cane Growers Coop. of Fla. v. Veneman,* 289
F.3d 89, 97 (D.C. Cir. 2002)). Because the GE Rule is familiar to both the agency and regulated
entities, a return to the prior status quo is warranted. *Pascua Yaqui Tribe*, -- F. Supp. 3d --, 2021
WL 3855977, at *5 (rejecting remand without vacatur where a return to the prior "regulatory
regime is familiar to the Agencies and industry alike").

　　　　Moreover, even if the Department has failed to maintain an MOU with the SSA to
provide access to earnings data, the lack of data fails to justify the collapse of the entire GE Rule.
The Department ignores numerous aspects of the Rule that neither require earnings data nor have
any hurdles to immediate implementation. For example, without SSA data, vacatur would still
provide the Department with instant authority to require institutions to issue program-level
disclosures, benefiting the prospective students who will receive them. 34 C.F.R. § 668 413(a)(1)

---

[10]　　　　The Department also has not demonstrated what steps—if any—it has taken to restore the
MOU with SSA, whether it has sought to reverse changes to its "operational systems," Remand
Mot. at 11, or whether it has considered reallocating its "staffing and contracting resources,"
Kvaal Decl. ¶ 8. The Department states that SSA is "unwilling" to enter an MOU, *id.* ¶ 9, but has
not explained whether the Internal Revenue Service ("IRS") could serve as an alternate source of
program-level data (even if minor changes to the GE Rule would be required after vacatur). *See
id.* ¶ 7 (describing the use of program-level earnings information derived from IRS data).
Plaintiffs are aware of no case—and the Department cites none—in which these sorts of internal
agency issues justify disregarding the APA.

(describing information that institutions "must disclose" under 34 C.F.R. § 668.412).[11]

Institutions would also be immediately subject to reporting requirements, *id.* § 668.411, which the Department has stated would benefit its evaluation of programs and support the goal of additional transparency for students. 79 Fed. Reg. at 64,891; *see also, e.g.*, 79 Fed. Reg. at 64,974 ("[Allowing some institutions to avoid reporting requirements] would undermine the effectiveness of both the accountability and transparency frameworks of the regulations because the Department would be unable to assess the outcomes of many programs. In addition, students would not be able to access relevant information about these programs and compare outcomes across multiple metrics."). Institutions would additionally be required to make certain certifications with respect to their existing and new gainful employment programs, 34 C.F.R. § 668.414, and could be required to provide warnings to students pre-enrollment. *Id.* § 668.410; *see also id.* § 668.403(c)(5). The Department believed each of these requirements to be critical when it adopted the GE Rule. There is no basis to discard them now because the Department claims it is unable to immediately implement a different portion of the Rule.

The Department also claims that—in the face of likely new rulemaking—its time is "better spent on the rulemaking process itself" than on implementing the GE Rule and that vacating the Repeal would inject "uncertainty" into the regulatory process. Remand Mot. at 12;

---

[11]     Although Mr. Kvaal asserts that the Department does not have the operational capacity to "disseminate disclosure templates," Kvaal Decl. ¶ 8, he provides no justification. In reality, the Department's website currently includes a Microsoft Word version of the prior disclosure template. *See* U.S. Dep't of Educ., Gainful Employment Disclosure Template, https://www2.ed.gov/about/offices/list/ope/ge-template.html (last visited November 11, 2021). It strains credulity to suggest that a cabinet-level agency managing a $1.6 trillion loan portfolio does not have the capacity to update this document or otherwise disseminate a template that institutions, not the Department, must use to disclose information to prospective and enrolled student. 34 C.F.R § 668.412 (requiring an institution to "use the disclosure template provided by the Secretary to disclose information").

Kvaal Decl. ¶ 12. Both assertions are contrary to law. *See Bureau of Land Mgmt.*, 277 F. Supp. 3d at 1127 (rejecting the contention that future rulemaking supports a remand without vacatur where a new rule would not take effect for a "number of months"); *Pascua Yaqui Tribe*,  -- F. Supp. 3d. --, 2021 WL 3855977, at *5 (noting that "[r]egulatory uncertainty typically attends vacatur of any rule and is insufficient to justify remand without vacatur") (citing *Nat. Res. Def. Council v. Wheeler*, 955 F.3d 68, 85 (D.C. Cir. 2020)). If interference with the regulatory process "were alone enough to prevent vacatur, vacatur would never be warranted on voluntary remand, where an agency has necessarily indicated its intent to engage in 'new rulemaking.'" *Navajo Nation v. Regan*, No. 20-cv-602-MV, 2021 WL 4430466, at *4 (D. New Mex. Sept. 27, 2021).

In touting the benefits of a new rulemaking, the Department also leaves out the HEA's "Master Calendar Rule," under which any future gainful employment regulation may not take effect until July 1, 2023 *at the earliest*.[12] If the Department does not finalize a new rule before November 1, 2022—a distinct possibility given that the rulemaking process has yet to begin[13]—a

---

[12]     Under the HEA, new regulations that were not published by November 1, 2021—absent "good cause"—cannot, as a matter of law, take effect until at least July 1, 2023. HEA § 482(c)(1), 20 U.S.C. § 1089(c)(1); *see also Bauer v. DeVos*, 325 F. Supp. 3d 74, 92–96 (D.D.C. 2018) (describing the HEA's "Master Calendar Rule").

[13]     Rulemaking, according to the Department, typically takes "well over 12 months to complete." Program Integrity & Improvement, 83 Fed. Reg. 31,296, 31,299 (July 3, 2018). Notwithstanding its assertions otherwise, the Department has not announced the start of rulemaking on gainful employment. On May 26, 2021, it announced public hearings to discuss possible regulation on several topics, including gainful employment. *See* Kvaal Decl. ¶ 11 (citing Negotiated Rulemaking Comm.; Public Hearings, 86 Fed. Reg. 28,299 (May 26, 2021)). But in its brief, the Department failed to mention its most recent announcement that regulations on gainful employment were *not* moving forward, but would be among the topics that "*may* be considered by a separate rulemaking committee . . . at a later date." Negotiated Rulemaking Comm.; Negotiator Nominations & Schedule of Comm. Meetings, 86 Fed. Reg. 43,609, 43,611

new rule will not take effect until at least July 1, 2024. Absent vacatur, the illegal Repeal will remain the law for years. Vacatur, by contrast, reinstates the old rule *immediately* and permits the Department to use the rulemaking process to make any changes it deems necessary.[14]

The Department's recitation of internal administrative burden likewise fails to consider the substantial public interest benefits of vacatur. *Friends of the Cap. Crescent Trail v. Fed. Transit Admin.*, 218 F. Supp. 3d 53, 60 (D.D.C. 2016) (noting that the agency's submission "unfortunately discuss[es] the potentially disruptive effects of vacatur as if they occur in a vacuum, without weighing the potentially disruptive effects that could flow from remand without vacatur"); *Coal. to Protect Puget Sound Habitat v. U.S. Army Corps. of Engineers*, 466 F. Supp. 3d 1217, 1226 (W.D. Wash. 2020) (granting remand with vacatur over the objections of parties who had not shown that the impact of vacatur "outweigh[ed] the environmental consequences of continuing their activities as currently permitted"). There is no dispute that the GE Rule protected students from attending programs that left them with student loan debt they could never afford to repay prior to the Repeal. Compl. ¶ 5. Vacating that Repeal will bring back much needed protections, as the Department has implicitly conceded through its desire to include student protections in a new or modified gainful employment rule. *See* Kvaal Decl. ¶ 11. In contrast, delaying the Rule until 2023, 2024, or later means that hundreds of thousands of prospective and enrolled students will not receive protections afforded to them under the GE

---

(Aug. 20, 2021) (emphasis added). Moreover, contrary to the Department's assertion, its October 24, 2021, Federal Register notice also did not mention gainful employment, focusing instead on a completely separate topic. *See* Negotiated Rulemaking Comm.; Public Hearings, 86 Fed. Reg. 54,666, 54,667 (Oct. 4, 2021) ("The Department intends to regulate on what is commonly referred to as the 90/10 rule."). Although the Department may have intentions to regulate, those are, at this point, unsupported by the public record.

[14]   If the Court is concerned with an immediate vacatur, it would be within the Court's discretion to stay the vacatur for a limited period to facilitate regulatory compliance.

PLAINTIFFS' STATEMENT OF OPPOSITION IN PART AND NON-OPPOSITION IN PART TO DEFENDANTS' MOTION FOR REMAND, Case No. 20-cv-455-EJD

17

Rule.[15] This, as the Department admitted, could lead students to "make poor educational investments." Compl. ¶ 293; 84 Fed. Reg. 31,394.

Although the Department cites potential costs of vacatur, it also ignores the substantial savings of implementation. In 2014, the Department found that the GE Rule would have a net savings of approximately $4.2 billion over the first ten years. 79 Fed. Reg. at 65,081. By contrast, in 2019, the Department estimated that the Repeal would result in an estimated "$6.2 billion cost in increased transfers from the Federal government to Pell Grant recipients and student loan borrowers and subsequently to institutions, primarily from the elimination of the ineligibility provision of the GE regulation." 84 Fed. Reg. at 31,447. Vacating the Repeal and implementing the GE Rule will save the Department money.

Finally, the Department claims that vacatur would require it to "expend further resources defending against lawsuits" challenging its implementation (or inability to implement) the GE Rule. Remand Mot. at 11; Kvaal Decl. ¶ 12. But that concern is highly speculative. In the only litigation of which Plaintiffs are aware in which a party challenged the Department's failure to implement the GE Rule, the Department argued, and the court held, that the plaintiffs lacked Article III standing. *See Maryland v. U. S. Dep't of Educ.*, 474 F. Supp. 3d 13, 30–44 (D.D.C. 2020), *vacated and remanded on other grounds,* No. 20-5268, 2020 WL 7868112 (D.C. Cir. Dec. 22, 2020). It is thus difficult to see how the Department can credibly cite a potential barrage of litigation by individuals challenging its lack of implementation.[16] Nor is a new rulemaking a

---

[15]     Although the Department claims that Plaintiffs will not be prejudiced by remanding without vacatur, nothing could be further from the truth. The "opportunity to participate in the public rulemaking process," Remand Mot. at 14, as the Department is legally required to allow the public to do, will provide no help to Plaintiffs or any other student who needs the protections of the GE Rule today.

[16]     The Department separately claims that remand without vacatur will "promote[] judicial economy" and conserve judicial resources. Such an argument applies equally to remand with vacatur as it does to remand without vacatur. Accordingly, we do not address that point here.

panacea to end legal disputes. If history teaches anything about gainful employment, it is that regulated entities will likely challenge a new rule. Prior GE rules were the subject of at least four lawsuits. Compl. ¶¶ 77, 142, 161. Should the same happen here, serious practical consequences will flow from a failure to vacate. If a future court vacates a future rule, the status quo will revert to the unlawful Repeal. That is not what the APA contemplates when it commands unlawful actions be "set aside." *See Bureau of Land Mgmt.*, 277 F. Supp. 3d at 1127 (finding the likelihood of a litigation challenge to a future rule—supported by the "litigation history" surrounding the regulation at issue—to be a factor favoring vacatur).

At bottom, the Department has not identified a single significant disruption to the public that will result from vacatur. Instead, it seeks to deny the "standard remedy of vacatur," deny the public the benefits of the GE Rule for an unknown length of time, and do so in a way that constitutes a "free pass for [the Department] to exceed [its] statutory authority and ignore [its] legal obligations under the APA, making a mockery of the statute." *Bureau of Land Mgmt.*, 277 F. Supp. 3d at 1126.

## II.   In the alternative, the parties should engage in expedited summary judgment briefing.

If this Court does not order a remand, either with or without vacatur, Plaintiffs respectfully request an order scheduling expedited summary judgment briefing. As the Department notes, the issues in this litigation are likely to impact future rulemaking. It would therefore benefit students and sound public policy to have the issues in this case resolved before the Department publishes a Notice of Proposed Rulemaking. In addition, since the Repeal, students have not received the GE Rule's protections against unaffordable student loan debt. Considering the serious errors in the Repeal and Plaintiffs' strong likelihood of success on the merits, expediting summary judgment would be a prudent path to protect Plaintiffs and other students across the country.

## CONCLUSION

For the reasons stated herein, the Court should couple the Department's requested remand with a vacatur of the Repeal.

Respectfully submitted,

Glenn Rothner (SBN 67353)
ROTHNER SEGALL & GREENSTONE

Daniel A. Zibel (admitted *pro hac vice*)
Aaron S. Ament (admitted *pro hac vice*)
Robyn K. Bitner (admitted *pro hac vice*)
NATIONAL STUDENT LEGAL DEFENSE
NETWORK

By: /s/ Daniel A. Zibel
DANIEL A. ZIBEL

Date: November 11, 2021                    *Counsel for Plaintiffs*