Glenn Rothner (SBN 67353)
ROTHNER SEGALL & GREENSTONE
510 South Marengo Avenue
Pasadena, CA 91101
grothner@rsglabor.com
Telephone: (626) 796-7555
Facsimile: (626) 577-0124

Daniel A. Zibel (*admitted pro hac vice*)
Aaron S. Ament (*admitted pro hac vice*)
NATIONAL STUDENT LEGAL DEFENSE NETWORK
1701 Rhode Island Ave, N.W.
Washington, D.C. 20036
dan@defendstudents.org
aaron@defendstudents.org
Telephone: (202) 734-7495

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ISAI BALTEZAR & JULIE CHO,<br><br>*Plaintiffs*,<br><br>vs.<br><br>MIGUEL CARDONA, *in his official capacity as Secretary of Education*, & UNITED STATES DEPARTMENT OF EDUCATION,<br><br>*Defendants*. | Case No. 20-cv-00455-EJD<br><br>**LOCAL RULE 7-11 ADMINISTRATIVE MOTION TO LIFT THE ABEYANCE ORDER** |

Plaintiffs file this Administrative Motion under Civil L.R. 7-11 to request that the Court lift its order holding this matter in abeyance. Pursuant to Civil L.R. 7-11(a), the attached Declaration of Daniel A. Zibel explains why a stipulation could not be obtained. A proposed order is attached.

**PROCEDURAL POSTURE AND RECENT DEVELOPMENTS**

This case began in January 2020 to challenge the unlawful repeal by the U.S. Department of Education ("ED") of its Gainful Employment ("GE") rule. Dkt. 1. On May 26, 2020, ED moved to dismiss under Fed. R. Civ. P. 12(b)(1), arguing that Plaintiffs lacked Article III standing. Dkt. 26. On September 3, 2020, this Court granted that motion with respect to Counts 4-10 and denied that motion with respect to Count 11. Dkt. 33 ("MTD Order").[1] ED then moved for reconsideration as to Count 11, which the Court denied. Dkt. 44. In October 2021, ED again sought to dismiss the case, via a Motion for Remand Without Vacatur. Dkt. 48. On May 10, 2022, the Court denied the third dismissal attempt, but ordered the case held in abeyance to give the Department time to engage in rulemaking. Dkt. 73 ("Abeyance Order") at 8-10. The Court noted that "if the Department's rulemaking does not moot or otherwise resolve Plaintiffs' claims, Plaintiffs would be able to request the abeyance be lifted and pick up the litigation where they left off." *Id.* at 9.

On May 19, 2023—more than one year after the Abeyance Order issued—ED published a Notice of Proposed Rulemaking regarding GE. 88 Fed. Reg. 32,300 (May 19, 2023) ("NPRM"). The NPRM correctly recognizes—once again—a need to protect students across higher education and proposes steps in that direction. Nevertheless, the NPRM is a non-final *proposal* that is subject to a 30-day comment period, consideration of those comments, potential revision by ED, approval by the Office of Management and Budget, and potential litigation. *See State v. Bureau of Land Mgmt.*, 277 F. Supp. 3d 1106, 1126–27 (N.D. Cal. 2017) (discussing steps between an NPRM and a final rule). If not published in final form by November 1, 2023 (157 days after this filing), a new rule cannot take effect before July 1, 2025; at the earliest, the Rule will take effect July 1, 2024.

---

[1] Despite the text of the MTD Order, ED takes the position that the Court also dismissed Counts 1–3. Dkt. 48 at 4–5 n.2*; see also* Dkt. 35 at 4. ED has never sought reconsideration or clarity of the MTD Order, but instead claims that the dismissal order "necessarily encompasses" Counts 1-3. *Id.*

# ARGUMENT

Having repeatedly held that Plaintiffs have stated a claim and properly alleged standing, the Court should lift the Abeyance Order. For more than three years, Plaintiffs have been unable to seek redress and an unlawful agency action has escaped review. In the interim, millions of students have enrolled in GE programs without meaningful federal oversight.

These past harms cannot be undone. But there is time to prevent future harm. The NPRM establishes the importance of a strong GE rule, which Plaintiffs support. Although Plaintiffs are optimistic that ED will finalize the Rule expeditiously, this lawsuit remains critical. The GE regulation is one of the most contested regulations impacting institutions of higher education. Every iteration of the regulation has been challenged in a U.S. District Court, *see* Compl. ¶¶ 77, 142, and the current effort will likely be no different. Within hours of its release, the NPRM was widely (and wrongfully) criticized by ideological opponents who referred to the proposal as the "most arbitrary version"[2] of GE. Simply put: any new regulation is almost certainly going to be challenged in court. Should Plaintiffs continue to be deprived of their rights to proceed, if the new regulation is stayed during litigation (or vacated by litigation), **the Repeal will remain the law of the land without any judicial review**. This result eviscerates the role of the judiciary in ensuring the constitutional soundness of agency action. *Cf. Landis v. North American Co.*, 299 U.S. 248, 255 (1936) (cautioning against stays where there is a "fair possibility" that a stay will "work damage to some one else"); *In re LinkedIn ERISA Litig.*, No. 5:20-CV-05704-EJD, 2022 WL 109360, at *3 (N.D. Cal. Jan. 12, 2022) (denying stay and setting standards for courts to consider); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014) (restating the longstanding principle that a "federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging."); *California v. Bernhardt*, 460 F. Supp. 3d 875, 893 (N.D. Cal. 2020) (applying the "obligation to hear and decide cases" in rulemaking cases).

---

[2] Nicholas Kent (@NicholasKentEd), Twitter (May 18, 2023, 3:59 AM), https://twitter.com/NicholasKentEd/status/1659106404391690241?s=20

Any asserted tension between this case and ongoing rulemaking is a distraction. The only appropriate path—to protect students (including plaintiffs) and promote functioning government—is to lift the Abeyance Order and order expedited summary judgment motions (that will quickly prove the unlawfulness of the Repeal). ***If the Repeal is held unlawful, Plaintiffs will consent to staying vacatur until July 1, 2024—i.e., the target effective date for the Department's new Gainful Employment Rule.*** 88 Fed. Reg. 32,316. This approach is particularly appropriate given the NPRM's (i) failure to redress the procedural violations asserted in Count 11, despite ED's promises to the contrary; and (ii) confirmation of Plaintiffs' case on the merits of Count 1[3] (including establishing that the Department's redressability arguments have been a complete red herring).

## I.   The NPRM Fails to Redress Count 11.

Count 11 asserts that ED, in the proposed and final Repeal, hid the analyses and research on which the Repeal was based, thus depriving Plaintiffs and the public of a meaningful opportunity to comment on the Repeal. *See* Compl., Count 11 ¶ 445(a)–(e). As the Court described it when denying the Motion to Dismiss this count:

> [ED] maintained that it used "well-respected, peer-reviewed references to substantiate its reasons throughout these final regulations for believing that [debt-to-earnings] rates could be influenced by a number of factors other than program quality." Of course, these references were not identified. In other places, the [ED] cites to its own "analysis," but never clarifies what that analysis entails. *See e.g.*, *id.* at 31,398 & n.27.

Dkt. 33 at 22. This court has determined that these injuries are "redressable and can proceed." Dkt. 73 at 7; *see also* Dkt. 33 at 21 ("[A]n agency commits serious procedural error when it fails to reveal portions of the technical basis for a proposed rule in time to allow for meaningful commentary").

The Department previously pledged that the NPRM would "address the very concerns that Plaintiffs have alleged with respect to the past notice and comment procedures" from the Repeal. Dkt. 48 at 9; *see also id.* at 13 (noting that "the procedural issues raised in Count 11 . . . will likely be re-evaluated in the Department's new rulemaking."). Unfortunately, in the NPRM, ED neither

---

[3] Although Plaintiffs focus here on Count 1, arguments regarding both redressability and correctness apply equally to Counts 2 and 3.

LOCAL RULE 7-11 ADMINISTRATIVE MOTION TO LIFT THE ABEYANCE ORDER, Case No. 20-cv-455-EJD   3

identified the sources it relied upon in the Repeal, nor did it disclaim reliance on those sources. Count 11 is thus just as alive and ripe today as it was when this suit began. The fact that ED is broadly reconsidering Gainful Employment neither moots this action nor mitigates its failure to address the "specific agency action being challenged." *Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 388 (D.C. Cir. 2017) (noting the importance, in the context of remand, of affording plaintiffs an "opportunity to vindicate [their] statutory rights under the APA").

## II.     The NPRM Establishes the Correctness and Redressability of Count 1

Count 1 asserts that the Repeal was based on an incorrect interpretation of the HEA because the Department claimed that repealing the 2014 rule was "enforcing the law as written and intended." 84 Fed. Reg. 31,392, 31,401 (July 1, 2019). Plaintiffs have previously explained how this statement conflicted with the holdings of every court to address the lawfulness of a Gainful Employment Rule. *See, e.g.*, Compl., Count 1 ¶¶ 351–375; Dkt. 50 at 5-6.

The NPRM concedes this point. Whereas the Repeal claimed it was an effectuation of Congressional intent, ED now asserts that the Secretary has a "*legal duty* to interpret, implement and apply" the gainful employment language. 88 Fed. Reg. at 32,322 (emphasis added); *see also* 88 Fed. Reg. 32,307; *id.* at 32,311 (noting that the NPRM is "[c]onsistent with our statutory authority"); *id.* at 32,342-43 (asserting that it is "permissible" for ED to specify eligibility standards for GE programs). By taking this position—and aligning itself with its 2014 self, the Complaint, and prior legal holdings—ED has admitted this error of its 2019 ways.

To the extent ED argues Count 1 is not redressable, the NPRM also proves otherwise. For example, Plaintiffs have repeatedly alleged a redressable injury caused by the repeal of the Certification Requirement, once called by ED "an independent pillar of the accountability framework." Compl. ¶ 100. This piece of the 2014 rule required institutions to certify that programs "satisfy accrediting requirements and meet any state licensure requirements for occupations that the programs are designed [for]." *See* Compl. ¶¶ 98, 100. The Department stated previously that the Certification Requirement would "minimal[ly]" burden institutions and "any burden was outweighed by the benefits of the requirements[,] which…will help ensure that programs meet minimum standards for students to obtain employment in the occupations for which the receive training."

Compl. ¶¶ 99; 79 Fed. Reg. at 64,989.[4] After the Repeal, those benefits were gone; but in the NPRM, ED reignites its efforts to "inform students about the States where programs . . . do not meet programmatic and licensure requirements." 88 Fed. Reg. at 32,314.

Critically for redressability purposes, the NPRM proposes to reinstate certification requirements, *see* 88 Fed. Reg. 32,346 (discussing proposed 34 C.F.R. § 668.604), and anticipates that doing so will not be burdensome. *E.g.*, 84 Fed. Reg. 32,476 (asserting no "significant budgetary impact" from reinstitution of the certification requirement). The Department cannot reasonably argue that reinstating the Certification Requirement is an impossibility (to defeat redressability and Article III standing in this case), while simultaneously proposing to reinstate a similar version of the Certification Requirement via its new regulation.[5]

## CONCLUSION

For the reasons stated herein and at the August 29, 2022 status conference, the Court should lift the Abeyance Order and establish an expedited schedule for briefing summary judgment.

Respectfully submitted,

/s/ Daniel A. Zibel

---

[4] In 2022, ED approved $1.5 billion in debt relief to former Westwood College students because the school did not meet necessary standards for graduates to meet state licensure requirements. *See* Press Release, U.S. Dep't of Educ., Education Department Approves $1.5 Billion in Debt Relief for 79,000 Borrowers Who Attended Westwood College (Aug. 30, 2022), https://tinyurl.com/f3yhh82u. Last week, U.S. Senate Judiciary Committee Chair Dick Durbin cited the example of Westwood College as the need for bringing back a strong Gainful Employment regulation. *See* Dick Durbin, *Dick Durbin: Proposed Biden rules would protect students from debt, improve college programs*, Chicago Tribune (May 24, 2023), https://tinyurl.com/5xxkvpju.

[5] The NPRM also demonstrates fault in ED's repeated protestations that it this suit is unredressable because it cannot obtain SSA earnings data. In the NPRM, the Department proposes to allow ED to rely on that exact same data, 88 Fed. Reg. 32,490 (proposing to include SSA within the definition of "federal agency with earnings data"), but states simply that the Department "prefer[s]" not do use this data source. *Id.* at 32,334.

| | |
|---|---|
| | Glenn Rothner (SBN 67353) |
| | ROTHNER SEGALL & GREENSTONE |
| | |
| | Daniel A. Zibel (admitted *pro hac vice*) |
| | Aaron S. Ament (admitted *pro hac vice*) |
| | NATIONAL STUDENT LEGAL DEFENSE |
| | NETWORK |
| Date: May 30, 2023 | *Counsel for Plaintiffs* |