BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
MARCIA BERMAN
Assistant Director, Federal Programs Branch
KATHRYN L. WYER (Utah Bar No. 9846)
U.S. Department of Justice, Civil Division
1100 L Street, N.W., Room 12014
Tel. (202) 616-8475
kathryn.wyer@usdoj.gov
*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| ISAI BALTEZAR & JULIE CHO, | Case No. 5:20-cv-455-EJD |
| Plaintiffs, | **JOINT STATUS REPORT** |
| v. | Hon. Edward J. Davila |
| MIGUEL CARDONA, in his official capacity as Secretary of Education, *et al.*, | |
| Defendants. | |

Pursuant to the Court's notice of December 7, 2023, the parties submit this joint status report. This case, originally filed in January 2020, challenges a final rule issued by the U.S. Department of Education ("Department") in 2019 ("2019 Rule"), which rescinded a prior Department rule, issued in 2014 ("2014 Rule"), that set forth disclosure and eligibility requirements for certain programs that are statutorily defined as leading to "gainful employment" ("GE") and that wished to participate in the Department's student aid programs under Title IV of the Higher Education Act of 1965 ("HEA"). After certain of the plaintiffs' claims were dismissed, *see* Orders of Sept. 3, 2020 [ECF 33] & Sept. 29, 2021 [ECF 44], the Department sought to remand the case in light of anticipated rulemaking proceedings that were likely to reconsider further regulation on the subject of gainful employment and could ultimately yield a new rule that would supersede the 2019 Rule under challenge. *See* Mot. to Remand [ECF 48].

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Although the Court did not remand the case, it granted the Department's alternative request that the case be held in abeyance while the Department's rulemaking process was underway. Order of May 10, 2022 [ECF 73], at 10; *see also* Order of June 27, 2023 [ECF 81] (denying plaintiffs' motion to lift abeyance while rulemaking process continued).

The Department issued a final rule on October 10, 2023, on the subject of Financial Value Transparency and Gainful Employment. *See* 88 Fed. Reg. 70004 (Oct. 10, 2023) ("2023 Rule"). On October 20, 2023, the parties filed a joint status report, notifying the Court of the 2023 Rule and indicating that plaintiffs were still in the process of reviewing it. [ECF 82]. The parties have now further conferred and disagree regarding whether and how this case should proceed. The parties set forth their respective positions.

**Plaintiffs' Position**:

Plaintiffs filed this case more than four years ago. Since then, this Court has held that Plaintiffs have adequately alleged Article III standing and have "stated a claim for relief," *see* ECF 33, and has denied reconsideration of that ruling, *see* ECF 44. Yet despite these rulings and the passage of time, Plaintiffs have not been permitted to have their case adjudicated on the merits. Nor—four years into this litigation—have Defendants even been required answer the Complaint or produce the Administrative Record. At the same time, Plaintiffs' injuries continue without remedy. Given this posture, Plaintiffs highlight the following considerations and present a path forward.

1.     **The publication of the Final Rule does not moot Plaintiffs' claims.** The Department is using this JSR to suggest that the Court *sua sponte* revisit its prior rulings and/or dismiss this case on the basis that the publication of the 2023 Rule has mooted Plaintiffs' claims. Although the Department's mootness position may become correct at some point in time, the Ninth Circuit has made abundantly clear that it is not yet correct. *California v. Azar*, 911 F.3d 558, 568–69 (9th Cir. 2018) (noting that the mere publication of a superseding regulation does not moot a challenge to the prior regulation when the superseding regulation has not yet taken

effect). Here, as in *Azar*, the new regulation has indisputably not taken effect. Thus, the claims are not moot and the Department's arguments are both premature and foreclosed by *Azar*.

Even after July 1, 2024, when the Department asserts that the 2023 Rule takes effect, the matter will not immediately be mooted because critical aspects of the 2023 Rule (the "Delayed Effectiveness Provisions") do not take effect until July 1, 2026. *See* 88 Fed. Reg. at 70077 (noting that the 2023 provisions regarding student warnings and providing information to students regarding "risky programs" will not take effect until July 2026.; *id. at* 70187 (new regulatory text for 34 C.F.R. § 668.43(d) establishing that informational requirements do not take effect until July 1, 2026). Thus, far from mooting Plaintiffs' injuries, the 2023 Rule guarantees those injuries—and similar injuries suffered by millions of other students—will persist for at least two-and-a-half more years.

This Court has recognized that the Delayed Effectiveness Provisions are key to Plaintiffs' claims because "the 2019 Rescission Rule created a reasonably probable threat to [plaintiffs'] concrete interest in utilizing information" such as "warning[s] to students and prospective students detailing how the program had not passed standards established by the [Department]." ECF 44 at 6. Similarly, because of the 2019 Rule, prospective students will no longer be informed "that there might be other similar (and presumably less risky) programs available to them—even at different schools altogether." *Id.* (quoting *Ass'n of Private Sector Colls. & Univs.*, 110 F. Supp. 3d at 183). The Delayed Effectiveness Provisions could remedy some of the *precise* harms that Plaintiffs and others continue to experience because of the 2019 Rule.

In contrast, as Plaintiffs have noted previously, if the 2014 regulation were reinstated, the Department could quickly prevent these harms to Plaintiffs and countless other students. Not only could the Department almost immediately update the Gainful Employment disclosure template (which the 2014 Regulation *requires* to be provided to students),[1] but the Department

---

[1]    The template remains accessible on the Department's website in Microsoft Word format, where the Department notes how the template enables "institutions to quickly and easily create a

could also *immediately* begin enforcing the 2014 Rule's certification requirements. The Department has previously referred to these requirements as an "independent pillar" of the Rule, *see* Compl. ¶ 100, and are of such critical importance that the Department is reinstating (via a wholly separate rulemaking) a version of the certification requirements (to take effect in July 2024). But if the 2019 Rule is vacated, the certification requirements will *immediately* protect students who enroll before July 2024. *See also* ECF 50 at 21; ECF 74 n. 7, ECF 79 at 6 (each discussing the importance of the certification requirements).

      **2.**      **Prudential considerations support Plaintiffs' Proposed Paths.** Plaintiffs suggest that the proper way to proceed in this case, given the procedural posture, timing, and Plaintiffs' likelihood of success on the merits,[2] is to establish a schedule for production of the administrative record and cross-motions for summary judgment. Short of adopting that path,

---

Web page containing the *required* gainful employment disclosure information for each of their eligible educational programs." Gainful Employment Disclosure Template, U.S. DEP'T OF EDUC. OFF. OF POSTSECONDARY EDUC., https://www2.ed.gov/about/offices/list/ope/ge-template.html (last visited January 23, 2024) (emphasis added).

[2]      Plaintiffs are likely to succeed because the 2023 Rule reflects multiple concessions that the challenged 2019 Rule was arbitrary and capricious. Most notably and as only one example, Counts 1-2 of the Complaint are premised around the 2019 Rule's erroneous statutory interpretation and application of Congressional intent. *See also generally* ECF 50 at 3 (discussing Defendants' repeated mischaracterization of this Court's holdings to argue that Counts 1-3 have been dismissed). In the 2023 Rule, the Department admits that the 2019 Rule's interpretation of Congressional intent "cannot be sustained." 88 Fed. Reg. at 70013, n.63. Likewise, whereas the Complaint highlights the Department's 2019 assertion that, by repealing the 2014 Rule, it was "enforcing the law as written and as intended," Compl. ¶ 354, the 2023 Rule shows the Department's disagreement (both implicit and explicit) that gainful employment regulations are undeniably "within the Department's statutory authority." 88 Fed. Reg. at 70013.

Plaintiffs propose—and previously proposed to Defendants (who rejected the idea)—that the case remain in abeyance pending a dispositive ruling in *American Ass'n of Cosmetology Schls. v. U.S. Dep't of Educ.*, No. 4:23-cv-01267, N.D. Tex. (2023) ("AACS Litigation"), in which Plaintiffs seek to vacate the 2023 Rule.

Although summary judgment proceedings are Plaintiffs' preferred approach, prudential considerations support holding this case in abeyance: should this Court dismiss this Complaint as moot, and if the *AACS* plaintiffs succeed, the U.S. District Court for the Northern District of Texas (and/or the U.S. Court of Appeals for the Fifth Circuit) may vacate or enjoin the 2023 Rule—thus ensuring the continued effectiveness of a clearly unlawful 2019 Rule. Meanwhile, if this Court dismisses this action, Mr. Baltezar and Ms. Cho—having adequately alleged both jurisdiction and a cause of action—will have been deprived of their right to have claim adjudicated.

Finally, if the Court is inclined to seriously consider the Department's mootness suggestions, the parties should be given the opportunity to fully brief that issue. Given the clarity of *Azar* and the existence of the Delayed Effectiveness Provisions, the case should—at a minimum—remain in abeyance until July 1, 2024, with the parties being then given the opportunity to address the status quo (as it then exists) and the Department's "heavy" burden of establishing mootness *Nw. Env'tal Def. Center v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988).

**Defendants' Position:**

This case should be dismissed as moot. The core question in a mootness inquiry is "whether granting a present determination of the issues offered . . . will have some effect in the real world. When it becomes impossible for a court to grant effective relief, a live controversy ceases to exist, and the case becomes moot." *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Sch.*, 565 F.3d 1232, 1250 (10th Cir. 2009) (internal quotation omitted). As an initial matter, this Court may consider mootness *sua sponte*, without a formal motion, because the question implicates the Court's subject matter jurisdiction. *See Bernhardt v. Cnty. of Los*

*Angeles*, 279 F.3d 862, 871 (9th Cir. 2002) ("[W]e must raise issues concerning our subject matter jurisdiction sua sponte. This includes mootness." (citation omitted)).

Moreover, the Court's dispositive rulings in past proceedings in this case make clear that dismissal is now appropriate. Although the plaintiffs emphasize that this case has been pending for four years, this Court recognized early on in these proceedings, by September 2020, that the plaintiffs' substantive claims were not redressable at the time the case was filed, depriving the plaintiffs of standing. *See* Order of Sept. 3, 2020, at 17 (recognizing that reinstatement of the 2014 Rule's disclosure provisions could not redress the plaintiffs' injuries), 20 (recognizing that reinstatement of the 2014 Rule's eligibility provisions was not likely to redress the plaintiffs' injuries), 20 n.5 (recognizing reinstatement of the 2014 Rule's certification provision would not redress the plaintiffs' asserted informational injuries). With respect to the plaintiffs' procedural claim in Count 11, the Court concluded that further rulemaking would itself provide the required redress by "allow[ing] the public an opportunity to comment on the sources upon [which] the [Department] relies and Defendants the opportunity [to] consider amending the GE Rule to use a different source of annual earnings data." Order of Sept. 29, 2023, at 7 n.3.

The Department has now completed a new rulemaking process, and a new rule has been promulgated that sets forth a new framework for assessing whether programs prepare students for gainful employment within the meaning of the HEA. The plaintiffs had every opportunity to raise any issues regarding the sources upon which the Department might rely during that process, to the extent they had any ongoing concerns along those lines, and the Department has built into the new rule the possibility of using a different source of annual earnings data for debt-to-earnings calculations. *See* 88 Fed. Reg. 32300, 32328 (May 19, 2023). Accordingly, at this point, there is no prospect that *any* of the plaintiffs' claims could yield any meaningful relief. Indeed, the plaintiffs in another case raising a similar challenge to the 2019 Rule have voluntarily dismissed their claims. *See* Pls. Notice of Voluntary Dismissal [ECF 62], *Pennsylvania v. DeVos*, No. 1:20-cv-1719 (D.D.C. filed Dec. 15, 2023). As in *Pennsylvania*, and as this Court has already recognized, "both Plaintiffs and the Department largely appear[ed] to be striving towards

a common purpose—the creation of an effective gainful employment regulatory framework."
Order of May 10, 2022, at 9 [ECF 73]. That purpose has now been achieved, as indicated by
Plaintiffs' failure to identify any disagreement with or defect in the 2023 Rule, much less one
that could be deemed at issue in this case, which challenges the previous rule. Defendants
respond to the plaintiffs' arguments below:

1. **The plaintiffs' claims are now moot, and no meaningful relief is available
   through this proceeding.**

      Plaintiffs acknowledge that the Department's publication of a superseding rule may moot
their challenge to the prior rule "at some point in time," but they rely on *California v. Azar*, 911
F.3d 558, 568-69 (9th Cir. 2018), for the notion that their claims cannot be deemed moot until
the 2023 Rule formally takes effect. However, the Court of Appeals in *Azar* faced a question not
before this Court—namely, whether it should weigh in on the validity of a preliminary injunction
that was already in effect and would continue to be in effect for at least a month after the court's
decision. *See id.* at 568-69 (concluding its December 13, 2018 decision could provide "effective
relief" on that issue because the superseding rule would not take effect until January 14, 2019).

      Here, in contrast, the plaintiffs identify no realistic possibility that this Court could
provide effective relief now. The plaintiffs rely heavily on the 2023 Rule's specification that the
Department website it contemplates may not be fully developed until 2026, suggesting that the
corresponding provisions can be called "Delayed Effectiveness Provisions." *See* 88 Fed. Reg. at
70077. However, the plaintiffs are entirely wrong in suggesting that the 2023 Rule leaves any
part of the 2019 Rule in effect until then. To the contrary, the 2023 Rule identifies a single
effective date for the Rule in its entirety, *id.* at 70004, and the specific regulatory provisions have
been published in a version "effective July 1, 2024." *Cf.* 34 C.F.R. § 668.43. The 2026 website
deadline is simply part of the 2023 Rule, which the plaintiffs do not challenge here.

      Furthermore, the plaintiffs' proposed reinstatement of a "disclosure template" under the
2014 Rule would not only have to cease once the 2023 Rule goes into effect, but it also has
already been rejected as redress by this Court, given the discretionary terms of the 2014 Rule

itself. Order of Sept. 3, 2020, at 17.[3] The Court has similarly rejected the notion that the 2014

Rule's certification provision could provide redress. *Id.* at 20 n.3. Plaintiffs cite the Court's

analysis of their "concrete interest" for their procedural claim in Count 11 but simply ignore that

the only redress the Court identified for that claim was likewise procedural in nature. *See* Order

of Sept. 29, 2021, at 7 & n.3. As explained above, that procedural remedy is no longer available

or necessary because a new rulemaking process has already occurred. Plaintiffs' procedural

claim is moot *now*.[4]

_____

[3] As the Department previously explained, reinstatement of the 2014 Rule would not

serve to compel the Secretary to use the old template that the plaintiffs cite. Indeed, the

Department's authorization under the Paperwork Reduction Act of 1995 to use that template

expired in September 2020, and it has no authority to reinstate the template without going

through a notice and comment process that would take months. Thus, as a practical matter,

resurrection of a new disclosure template would not be instantaneous as the plaintiffs appear to

suggest. Rather, any such effort would require resources that might otherwise be devoted to

preparing to implement the 2023 Rule. Moreover, the 2014 Rule simply does not require the

Secretary to include any specific information in the disclosure template, *cf.* 34 C.F.R. § 668.412

(eff. July 1, 2015 to July 1, 2020), as the Court already recognized. Order of Sept. 3, 2020, at 17.

[4] Plaintiffs also continue to insist that Counts 1 and 2 remain at issue. As Defendants

have explained, the only remedy Plaintiffs sought for Counts 1 and 2 was the reinstatement of

the transparency and eligibility frameworks of the 2014 Rule—the very remedies that the Court

already rejected as providing effective redress, leading to its dismissal of the plaintiffs'

substantive claims for lack of standing. Even if the Court agreed that the plaintiffs' technical

reading of past rulings is correct, the Court may now dismiss Counts 1 and 2 *sua sponte* for lack

of standing because the very same reasoning requiring dismissal of Counts 3-10 applies to

Counts 1 and 2 as well.

Nor do Plaintiffs explain how it would be possible to gain any meaningful relief even if the Court were to overturn the 2019 Rule in its entirety. Plaintiffs previously relied on the notion that the vacatur of the 2019 Rule would force the Department to reinstate the 2014 Rule. However, the Department is now preparing to implement the 2023 Rule. There is no realistic prospect that the Department could take any meaningful step towards reinstating the 2014 Rule before the 2023 Rule's effective date of July 1, 2024. Indeed, there remains no agreement between the Department and the Social Security Administration that would allow the debt to earnings metrics to be calculated as contemplated by the 2014 Rule. This Court thus lacks any power to grant relief that would impact the two individual plaintiffs in any meaningful way.

**2. Neither summary judgment proceedings nor a continued abeyance is warranted.**

The plaintiffs propose that the Court initiate summary judgment proceedings or, in the alternative, continue holding the case in abeyance. However, this Court previously rejected the plaintiffs' request to proceed with summary judgment briefing while the Department's rulemaking was underway. *See* Order of June 27, 2023 [ECF 81]. There is even less reason to begin summary judgment proceedings now that the 2023 Rule has been issued. The plaintiffs cite a recent challenge to the 2023 Rule by third parties, *see AACS v. Cardona*, No. 4:23-cv-1267 (N.D. Tex. filed Dec. 22, 2023). Essentially, the plaintiffs speculate that, despite their own apparent support for the 2023 Rule and disagreement with the claims in *AACS*, those claims might ultimately result in the complete vacatur of the 2023 Rule, and the 2019 Rule would then spring back into effect. But even if that were to happen, this Court has dismissed the plaintiffs' substantive challenge to the 2019 Rule, as noted above, so this case could not serve as a vehicle to pursue such a challenge. Indeed, the Court already refused to order summary judgment briefing based on the same "motivating concern." *See* Order of June 27, 2023, at 1-2.

In addition, the plaintiffs' speculation about how the 2023 Rule will fare in litigation has no proper bearing on mootness. *See Ass'n of Am. Physicians & Surgeons v. Sebelius*, 746 F.3d 468, 472–73 (D.C. Cir. 2014) (rejecting "the idea that a claim can be saved from mootness by the court's blithely hypothesizing that a whole other set of rules, not at issue in the present case, . . . ,

may be invalid"); *New York v. Raimondo*, No. 1:19-CV-09380, 2021 WL 1339397, at \*2 (S.D.N.Y. Apr. 9, 2021) (holding "[t]he possibility that the challenged rules could become operative again," should a new rule be vacated in litigation, insufficient to keep a controversy live).

    Nor would judicial economy warrant keeping this case pending in abeyance on the chance that the plaintiffs' claims here might someday be resurrected in some unknown form. That speculative prospect cannot preserve the Court's subject matter jurisdiction when no effective relief can be granted now. After all, not only is the ultimate disposition of *AACS* unknown, but the judicial reasoning that might prevail in that case, and the extent to which such reasoning might affect either the 2019 Rule or its predecessor, the 2014 Rule, is also unknown. The proper course of action at this stage is therefore to dismiss this case.

DATED:  January 25, 2024                    Respectfully submitted,

                                            Glenn Rothner (SBN 67353)
                                            ROTHNER SEGALL & GREENSTONE

                                            Daniel A. Zibel (admitted *pro hac vice*)
                                            Aaron S. Ament (admitted *pro hac vice*)
                                            NATIONAL STUDENT LEGAL
                                            DEFENSE NETWORK

                                            By: /s/ Daniel A. Zibel
                                            DANIEL A. ZIBEL
                                            *Attorneys for Plaintiffs*


                                            BRIAN M. BOYNTON
                                            Principal Deputy Assistant Attorney General
                                            MARCIA BERMAN
                                            Assistant Director, Federal Programs Branch

                                            /s/ Kathryn L. Wyer
                                            KATHRYN L. WYER (Utah Bar No. 9846)
                                            U.S. Department of Justice, Civil Division
                                            1100 L Street, N.W., Room 12014
                                            Tel. (202) 616-8475
                                            kathryn.wyer@usdoj.gov
                                            *Attorneys for Defendants*